(No. 34417.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE LADAS, Plaintiff in Error.

*Opinion filed November 20, 1957.*

R. B. HENDRICKS, of East St. Louis, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, (FRED G. LEACH, and BRUCE E. KAUFMAN, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiff in error, George Ladas, hereinafter referred to as defendant, was indicted for the crime of statutory rape alleged to have been committed on June 23, 1954. He was tried by the circuit court of St. Clair County without a jury and was found guilty as charged. Motions for a new trial were overruled and he was sentenced to the penitentiary for a term of 15 years. He has brought a writ of error to this court to reverse the conviction and remand the cause for a new trial.

From a careful review and comparison of the testimony, it appears that prosecutrix, 14 years of age, her 10-year-old girl friend and 7-year-old brother first met the defendant, a 37-year-old man, in Blumberg's Department Store in East St. Louis in the latter part of June, 1954. Prosecutrix sets the date as being shortly before Father's Day; the defendant, on June 18. Prosecutrix stated that defendant told her to come to his cleaning and dyeing establishment and he would give her some articles of clothing. She went there and was employed by him. The circumstances of her hiring are disputed. Prosecutrix said that the defendant offered her a job, that she talked to her mother by telephone and that the defendant talked to her mother about

it at the same time. He then told her to go home and return the next morning about 10 o'clock and he would have a job for her. This telephone conversation was corroborated by the mother but denied by the defendant. The defendant also denied asking her to work but said she asked for a job. At any rate, prosecutrix did report for work the next day at about 10:00 A.M. The exact nature and extent of her duties is not shown except that defendant stated that he told her what she was to do. She testified that in the morning she "just messed around," and that upon returning to work after lunch the defendant invited her upstairs to his apartment. She described it as consisting of two rooms and a lavatory, adding that there was no furniture in one room but the other contained a bed, two drawers, a closet, chair and a fan. She then related the details of an attack by the defendant, stating positively there was insertion and sexual intercourse; that after the attack she remained at the cleaners until about 3:00 P.M. and then went home. Upon arriving home, she went upstairs to her room. About an hour later she went down stairs and related the incident to her mother who, upon hearing the details, became ill. When her father came home from work, the police were called and she was taken to a physician for an examination. Her story concerning the details after her return home is substantiated by the testimony of her mother and father. The physician testified that he examined the prosecutrix on June 23, 1954, shortly after 6:30 P.M. and that his examination showed a lateral perforated hymen. Prosecutrix further testified that the day she was attacked was the only day she worked for defendant. The defendant testified that she worked three days, Saturday, Monday and Tuesday. The testimony of the 10-year-old girl friend of prosecutrix substantiates the prosecutrix's version of the meeting of the defendant in the department store, and the fact that prosecutrix was at the cleaners on the day they first met him and on the day following.

The defendant positively denied making an attack on prosecutrix or having intercourse with her at any time. He further testified that at the time of the alleged rape, he had removed all furniture from the upstairs apartment for the purpose of permitting Clarence Rowedder to redecorate and that on June 23, 1954, he was at a funeral home attending a wake for a deceased brother-in-law. To establish an alibi defendant called two nephews and a sister-in-law who testified, in substance, that defendant was at the funeral home the entire day of June 23, 1954. His brother-in-law testified that on June 21, 1954, Clarence Rowedder brought defendant's furniture to his restaurant and during that particular week the defendant lived at a place other than the apartment above the cleaning establishment.

After both prosecution and defense had rested their case, the prosecution was permitted to recall the defendant for the purpose of laying grounds for impeachment. He was questioned concerning a conversation with deputy sheriff Clifford Flood around Memorial Day, 1955. He admitted talking with Flood and when the latter asked him how he was doing with his case, he replied "not so good." Flood testified on rebuttal to a conversation he had with defendant on June 28, 1955, at the Fairmount Race Track. Flood stated that the defendant told him "He done it, and I questioned him why he done it, and he said he was about half drunk and this little girl was silly and pestering around him all the time." Further evidence in rebuttal, proving a previous conviction for robbery, was admitted over objection of defendant. The admission of this rebuttal evidence is assigned as error and we consider this contention first.

Although testimony that would be proper as evidence in chief should not be reserved for rebuttal, this matter rests largely within the discretion of the trial court and such a ruling ordinarily will not be set aside. (*People* v. *Lion,* 10 Ill.2d 208; *People* v. *Crump,* 5 Ill.2d 251; *People* v. *Drysch,* 311 Ill. 342.) The trial judge, faced with mak-

ing prompt rulings during the hurried and often hectic process of trial, has that range of discretion which permits the ascertainment of truth and fact. Defendant took the witness stand and denied the attack, making the actual act of sexual intercourse an uncorroborated point in the otherwise corroborated chain of circumstances. It was, therefore, incumbent upon the court to examine all extrinsic evidence material to this point and give judicious consideration to matters affecting defendant's credibility. As was said in *People* v. *Popovich,* 295 Ill. 491, at 495: "It is always competent to show, as a matter of impeachment, that a witness made a statement outside of court concerning material matters inconsistent with his testimony on the witness stand. This statement did not purport to be a confession and was not testified to as such but was offered as a matter of impeachment and was competent for that purpose." Furthermore, the evidence of defendant's conviction of the crime of robbery was admissible for the purpose of affecting his credibility. (Ill. Rev. Stat. 1955, chap. 38, par. 734; *People* v. *Halkens,* 386 Ill. 167.) By taking the stand as a witness in his own behalf, defendant was subject to examination, cross-examination and impeachment, as are other witnesses. (*People* v. *Provo,* 409 Ill. 63; *Chambers* v. *People,* 105 Ill. 409.) Since the defendant was tried before the court without a jury, there is no reason to believe that any greater weight was given this evidence, laying the groundwork for impeachment, because it was admitted upon recall rather than during original cross-examination. It was a matter resting in the sound discretion of the court to permit the recalling of the defendant, (*People* v. *Blume,* 345 Ill. 524; *Hauser* v. *People,* 210 Ill. 253; 6 Wigmore, Evidence, § 1882 *et seq.*) and there is no abuse of that discretion shown here.

Defendant next contends that the evidence fails to prove him guilty beyond a reasonable doubt. In cases of statutory rape the testimony of the prosecutrix, even though uncor-

roborated by other witnesses, may be sufficient to justify a conviction if the same is clear and convincing. (*People* v. *DeFrates,* 395 Ill. 439; *People* v. *Vaughn,* 390 Ill. 360.) Although defendant denied the act of sexual intercourse, the general truth of the girl's story is corroborated on such points as the circumstances of their first meeting, her presence at his place of business, his giving her a job, the time she went home, the shock and resulting illness of her mother, and her examination by a physician. The only circumstance not corroborated is the act of rape itself, an occasion rarely producing an eyewitness. Considering the matters corroborated, the damaging inconsistent statement attributed to the defendant which affected his credibility and the filing of an affidavit for continuance setting forth matters contrary to the alibi testimony, the trial judge was warranted in believing the prosecuting witness rather than the defendant and in finding defendant guilty as charged.

Defendant further contends that the court erred in denying his motion for a new trial based on the ground of newly discovered evidence. The motion was supported by five affidavits, two of which were executed by Clarence Rowedder and Wesley McIntosh. They swore, in substance, that except for lunch they worked continuously redecorating defendant's apartment during the hours of 8:30 A.M. to 5:00 P.M. on June 22 and 23, 1954, and from 8:30 A.M. to noon on June 24, 1954, and at no time did defendant enter the apartment with a girl. Obviously, testimony of these affiants would not constitute newly discovered evidence for it is inconceivable that they could have worked so steadily in defendant's apartment, above his place of business, without his knowing of their presence.

The only information to be gained from these affidavits is that either the defendant or the affiants swore falsely. Defendant in an affidavit supporting his first motion for continuance swore that Clarence Rowedder and Richard Moore were with him on the day of the alleged offense and

that they would testify that they were in his and the prosecutrix's company on June 23, 1954, and at no time did he assault or have intercourse with her. Furthermore, defendant testified at the trial that on June 23, 1954, he had removed his furniture and the apartment *was going* to be painted by Clarence Rowedder.

The three additional affidavits attached to the motion for new trial are merely assertions of defendant's presence at the funeral home on June 23, 1954. It is well established that, among other things, newly discovered evidence must not be cumulative of evidence already presented at the trial in order to be the basis of a new trial. (*People* v. *Silvia,* 389 Ill. 346; *People* v. *Marino,* 388 Ill. 203; *People* v. *Tillman,* 383 Ill. 560; *People* v. *Buzan,* 351 Ill. 610.) There had already been evidence presented at the trial that defendant was present at the funeral home on June 23, 1954. Again, the only information to be gained from these three affidavits is that either the affiants were swearing falsely or defendant was doing so when he moved for his first continuance. The trial court properly denied this motion for a new trial.

Finally, it is contended that the court erred in refusing to allow defendant's motion for a continuance because of the absence of material witnesses. The record discloses that the defendant was granted four continuances, delaying the trial of his case for almost one year. His first motion was based on lack of material witnesses; the second, on illness of counsel; the third, on the fact that defendant had changed counsel; and the fourth, on his agreement to be ready for trial on June 13, 1955. On the day agreed upon for trial, defendant again presented a motion for continuance, the denial thereof being assigned as error. This court finds no merit in defendant's contention that it was error to refuse a fifth continuance after he had received the benefit of four prior continuances. Furthermore, he had finally agreed on the date for trial and had available other

witnesses who could have testified to the same purported defensive matters.

The judgment of the circuit court of St. Clair county is affirmed.

*Judgment affirmed.*