**People of the State of Illinois, Appellee, v. Charles W. Zaeske (Impleaded), Appellant.**

Gen. No. 65–51.

Second District.

January 24, 1966.

Richard W. Husted, of Elgin, for appellant.

William R. Ketcham, State's Attorney, of Geneva, and Raymond M. Strass, Assistant State's Attorney, of Carpentersville, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

Defendant, Charles Zaeske, Billy Alston and Julian Alston were indicted in Kane County for theft of a Chevrolet automobile from Ross Rambler, an auto sales lot in Elgin, Illinois. Both Alstons pleaded guilty and applied for probation. Zaeske was tried as an accessory before the fact and was found guilty by a jury.

He appeals charging that the unsupported testimony of the Alstons was insufficient to sustain a guilty verdict, that defendant was not proved guilty beyond a reasonable doubt and that prejudicial error occurred during the trial.

A proper consideration of defendant's arguments requires a review of the evidence offered. It appears that the prosecution called eleven witnesses. The defense called defendant, his wife and five character witnesses.

For the People, Billy Alston testified that Zaeske, who ran a used car lot and garage, hired him as a body and fender man at $60 per week. About two weeks before the car theft, Zaeske said something about going to a used car lot and making a key. On the day of the theft, a Saturday, Zaeske told Billy and his father, Julian Alston, that he would get a car at Ross Rambler, have a key made and return the car for Billy to steal that night. Later that day Billy saw Zaeske give the elder Alston a key. He identified People's Exhibit No. 1 as the key given by Zaeske to his father. He testified Zaeske told him to take the car to Alabama and sell it. The proceeds were to be divided three ways. In addition, the Alstons were to take a 1949 dump truck belonging to Zaeske to Alabama and sell it. Billy then

117

took his father to the hotel and went to his own home in the dump truck. About 8:30 or 9:00 o'clock that night, he drove the dump truck to Route 58 and Barrington Road where he was to meet his father, who would be driving the stolen Chevrolet automobile. When he stopped at the intersection, the truck was struck in the rear by an automobile which turned out to be the stolen Chevrolet driven by his father. They left the stolen and now damaged vehicle at the intersection and returned to defendant's garage in the truck. Ten minutes after their arrival defendant Zaeske came to the garage. Billy told him about the collision and Zaeske gave him $10 for bandages for the elder Alston's injured chin.

On cross-examination Billy testified he could tell a Ford key from a Chevie key, but could not otherwise identify the key. He said he could wire around or jump an ignition so a car would start without a key. At the time of the collision he had title papers to the dump truck, but these papers were not signed by defendant Zaeske.

Julian Alston testified that on the day of the theft, Zaeske gave him the key and told him to go to Ross Rambler, steal the Chevrolet, take it to Alabama and sell it. Billy drove him to the Lee Hotel where he stayed until about 8:45 p. m. He then left and walked to Ross Rambler. He took the Chevrolet, using the key Zaeske had given him, drove to Route 58 where he met Billy and was following him when the accident occurred. They returned to the garage in the dump truck but he did not talk to Zaeske. On cross-examination Julian Alston acknowledged he had previously been convicted of murder and had served time in Alabama. He was then on parole. He had experience with parole and probation and knew that one of the chief considerations is the recommendation and attitude of the State's Attorney. He testified Zaeske gave him the key or he got it from the desk. He had no title papers for the Chevrolet.

118

Witness Ralph Steleaskey worked at Ross Rambler. He testified that at about 10:30 a. m. to 11:00 a. m. on the day of the theft, Zaeske came to borrow a 1960 Chevrolet to show to a customer. Zaeske returned the car about 12:30 p. m. or 1:00 p. m., and the next time the witness saw the car was after the theft and the accident.

Gerhardt Moosman is a locksmith. He testified that about 11:00 a. m. to 11:15 a. m. on the day in question, Zaeske came in to have a key made for a car which he said had just been sold. He made a key which he identified as Exhibit No. 1. He gave the key to Zaeske and was paid for his work. He testified that a person not skilled as a locksmith could not recognize a particular key simply from handling it.

Clark Houghtby testified he saw Zaeske having the key made by Moosman. Zaeske said he was getting the key for a party that was going to buy a car.

State Police Trooper John J. Jeskula testified to investigating the accident scene and finding a key similar to Exhibit No. 1.

Herbert Horn, sales manager at Ross Rambler, testified his organization had to establish ownership of the Chevrolet to obtain it from the police. The car had a brand new ignition key similar to People's Exhibit No. 1.

Police Officer Thomas Stegle testified that nine days after the theft he spoke to Zaeske and Zaeske said he borrowed the Chevrolet to show to a prospective customer whose name he could not recall. Stegle looked at the dump truck. The cab was painted red and the body black. Zaeske told him there was universal trouble with it and it would not have been in running condition. Nothing was said about the truck having been stolen. Later that day Stegle talked to Zaeske at the Elgin Police Station and Zaeske denied having the key made. Zaeske told him Billy Alston had stolen the Chevrolet and that Alston was then out on the road in one of Zaeske's car. Stegle went outside to Zaeske's car and found Alston and had

him brought into the station. Zaeske then charged Billy with stealing the truck. Alston said Zaeske borrowed the car from Ross Rambler, had the key made, gave the key to Billy's father and told him to steal the car and take it to Alabama with Billy following in the dump truck.

For the defense, Eva Zaeske, defendant's wife, testified that on the evening in question her husband did not leave his home and received no telephone calls.

Defendant Zaeske took the witness stand and testified that he had been in the used car business twenty-three years before his arrest. Billy Alston hung around Zaeske's place of business, but received no pay. He had purchased the dump truck for $75 and the universal joint was bad. On the day in question, he called Ross Rambler and arranged to borrow the Chevrolet to show to a customer. He went to the Ross lot, picked up the car and key, and returned to his own lot about 10:30 a. m. His customers were not there so he went to a drive-in restaurant for an early lunch. When he returned to his lot, the prospective customer was there and went on a demonstration ride in the Chevrolet. The customer spoke about wanting a second key and on the trip to return the car to Ross Rambler, he stopped at the locksmith's shop where Moosman made the second key.

Zaeske further testified that after returning the car to Ross, he went back to his own lot. He emptied his pockets onto his desk and left several items there, including the second key. The two Alstons were present at the time. He denied speaking to the Alstons about taking the car or about taking it to Alabama, and he stated he did not leave his home or talk to either Alston that evening. He went on to state that three days later he noticed the ignition on the dump truck had been jumped and there was blue paint on the rear end. He declared that when he first spoke to Officer Stegle he told him he had a key made.

120

The defense also presented five eminent and highly reputable witnesses who testified to defendant's good reputation for veracity and law-abiding behavior.

On rebuttal, the State called a witness, Richard Smith, who testified that he was employed by Zaeske and was present when Zaeske said he had borrowed a car, had a key made for it and that, that night the Alstons could take the car with the new key. This witness also related that Billy Alston did light mechanic work, body work and painting for Zaeske and had driven the dump truck home a couple of times.

■■ Defendant contends that because the Alstons had pleaded guilty, were awaiting the results of their application for probation and had not yet been sentenced, that a conviction of defendant cannot stand on their testimony alone. At common law the uncorroborated testimony of an accomplice was sufficient to warrant a conviction if it satisfied a jury beyond a reasonable doubt. This rule has been followed in Illinois. People v. Dabbs, 370 Ill 378, 19 NE2d 175 (1939); People v. Cohen, 376 Ill 382, 33 NE2d 593 (1941), (overruled on other grounds, see Schroers v. People, 399 Ill 428, 78 NE 2d 219, 1948). However, where, as here, it appears that the witness has hopes of reward from the prosecution, his testimony should not be accepted unless it carries with it absolute conviction of the truth. People v. Grove, 284 Ill 429, 120 NE 277 (1918); People v. Hermens, 5 Ill2d 277, 125 NE2d 500 (1955).

From our review of the evidence we find ample evidence to corroborate the testimony of the Alstons that Zaeske masterminded the theft of the Chevrolet. Moosman and Houghtby established the making of the second key; Stegle established defendant admitted repainting the truck, defendant's denial of having the key made, his denial of employing Billy Alston, his story about Billy's being out on the road when he was in fact parked near the police station waiting for defendant and the

initial failure of defendant to say anything about the truck being taken; and finally, witness Richard Smith directly established Zaeske's participation in the plans for the theft.

■ We agree with defendant's contention that the taking of the car to show to a customer and having the key made to satisfy the customer's request, if taken by itself, is plausible. We further agree that the Alstons had good reason to cooperate with the prosecution and that defendant appears to be a man of means who would be foolish indeed to participate in a scheme to steal a used automobile simply for the possibility of obtaining a third of the resale proceeds while at the same time giving up two-thirds of the sale price of the dump truck. However, we feel the record presents sufficient corroboration to support the verdict of the jury.

■ Defendant also urges that the Alstons' testimony was so illogical and conflicting as to be unworthy of belief. We have carefully reviewed each of the discrepancies mentioned in defendant's brief and in addition note that the Alstons' testimony is conflicting on whether they had already met on the highway before the collision and on whether Zaeske came to the garage during the evening. Nevertheless, we feel that these discrepancies are not so gross as to vitiate completely their testimony establishing defendant's participation in the crime. It would be a rare occasion indeed not to find discrepancies in the testimony of various witnesses to any given chain of events.

■ We also note that the witness Richard Smith testified that the conversation between Zaeske and the Alstons took place at 11:00 a. m. on the day of the theft, whereas it must have taken place, if at all, after noon. This is another discrepancy which proves that witnesses are not always perfect in their recollection or restatement of an occurrence; however, such an error does not necessarily render the testimony of the witness unworthy

122

of belief. People v. Clay, 27 Ill2d 27, 187 NE2d 719 (1963).

█ █ It is finally urged that prejudicial and reversible error was committed by the State's Attorney in cross-examination of defendant and in cross-examination of one of defendant's character witnesses. During cross-examination of defendant he was asked about preparation of sales tax forms for cars sold in 1964; he was asked about taking out a mortgage on some real estate and he was questioned concerning his drinking habits in August, September and October of 1964. The State's Attorney in argument over the objections to his questions said that the State was attacking the veracity of the defendant and was attempting to show motive. We believe the questions asked were proper cross-examination and we fail to find, as defendant suggests, that these questions were designed to prove that defendant had committed other crimes. Where, as here, the defendant elects to take the witness stand, he makes himself subject to cross-examination and impeachment, just as any other witness. People v. Ladas, 12 Ill2d 290, 146 NE2d 57 (1957).

The comments made by the State's Attorney were made during argument on defense objections to questions on cross-examination. We find no error in these statements. Likewise, we find no error in the question asked of the character witness to which objection was sustained.

The judgment of the Circuit Court of Kane County is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.