(No. 46406.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. LARRY KILGORE, Appellee.

*Opinion filed November 18, 1974.*

William J. Scott, Attorney General, of Springfield, and

174

Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and Dennis J. O'Hara, Assistant State's Attorneys, of counsel), for the People.

Edward M. Genson, of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

On May 17, 1969, 17-year-old Michael Causher was shot in the head and killed in front of a laundromat at 5056 South Cottage Grove Avenue in Chicago. For that murder Larry Kilgore, Ricky Smith, Henry Horton and Norvell Ealey were indicted and tried by a jury in the Cook County circuit court. Verdicts of not guilty were directed at the close of defendants' case as to all defendants except Kilgore, as to whom a guilty verdict was returned and a sentence of 15 to 30 years imposed. The First District Appellate Court reversed the conviction because of the absence of proof beyond a reasonable doubt of Kilgore's guilt. (15 Ill. App. 3d 862.) We granted the State's petition for leave to appeal and now affirm the appellate court.

The real issue at trial was the identity of the person firing the fatal shot, and whether others might be guilty on an accountability theory. The jury apparently believed Kilgore either shot the victim or was present and accountable, and the State here urges the appellate court substituted its judgment for what was properly a matter for jury determination.

It is here urged that the proof shows the four defendants were occupants of a vehicle that stopped at the scene of the killing; that one of the four left the car and fired two shots, fatally wounding the victim. It is of course clear that unless the proof establishes beyond a reasonable doubt that Kilgore fired the gun or was otherwise accountable, the appellate court was correct in its holding.

The only evidence linking defendant with the crime is the identification testimony adduced at trial. James Edwards testified that he was standing within 15 feet of the victim when the shots were fired. He observed an auto with five occupants pull up to the south curb at 51st Street. He knew four of the occupants, Kilgore and the other defendants, but did not know the fifth. He saw Norvell Ealey jump out of the car, run across the street, shout "Blackstone" and shoot down the victim. Ealey then ran east on 51st with the auto following, and when the car caught up, Ealey got in. Edwards testified that he, the victim, and several other witnesses were members of a street gang, and it was intimated that the occupants of the auto were members of a rival gang. Edwards described Ealey, the man he saw running away, as being five feet, seven or eight inches in height, slender, about 18 or 19 years old and dark-complected. Edwards also testified that Kilgore approached him several days after the shooting and told him, "We got your boy and the same thing that happened to Jay Hawk [the victim] will happen to you."

In contrast to Edwards's version of the event, Edward Levy testified that he was walking west on the south side of 51st Street near Cottage Grove at the time in question, and after hearing two shots he observed a tall, heavy, black man with a " bush" haircut wearing blue jeans and a blue jacket running east on the opposite side of 51st Street. Levy saw this man tuck a gun in his coat. He identified defendant Kilgore at trial as that man, and indicated he had known defendant prior to the occurrence. Levy did not see a dark, slender man going east on 51st Street, nor did he see the auto testified to by Edwards. One of Levy's companions, Yvette Winchester, heard the shots and saw a man with a husky build and a "bush" haircut running east on 51st Street. She, being nearsighted and without glasses, could not identify the man, nor could she state whether the man was black or white.

Leon Ligon was sitting in a restaurant on the corner of

Cottage Grove and 51st Street at the time in question. He heard two shots and observed through the restaurant window a six-foot tall, heavy, black man wearing dark clothing and a natural haircut run across Cottage Grove. He could not identify the individual. Michael Woodson was also in the restaurant and testified that Ligon was outside at the time of the shooting and came back in shouting the victim had been shot. Woodson went out and saw a tall, husky man with a "bush" haircut running east on 51st Street. He also observed an auto similar to the one described by Edwards going in the same direction. He saw the man from a distance of about one block and could not identify him or the occupants of the car. A police officer testifying in rebuttal stated that he interviewed Woodson after the killing, and Woodson made no mention of a tall heavy man running down 51st Street.

Juanita Campbell, a laundromat attendant, had just closed the laundromat at the time of the incident. She observed the victim and another young man standing nearby. She began to walk away, heard two shots and turned to see a man shove something in his belt. This man was short, stout and appeared to be 35 to 40 years old. She knew defendant Kilgore from his presence in the neighborhood and testified he was not the man she saw. The man got into a car, of a totally different description than that seen by other witnesses, and drove west on 51st, the opposite direction from that testified to by other witnesses who saw an auto leave the scene.

Defendants Smith and Horton presented alibi testimony as to their presence at a YMCA dance at the time of the occurrence, and Ealey presented evidence that he was at home watching television. Kilgore testified in his own behalf. He denied threatening Edwards and claimed to have been with his girl friend in an apartment until approximately the time of the incident at which time he went downstairs to a barbecue restaurant. A police officer testifying in Kilgore's behalf testified that approximately

one-half hour after the occurrence, he observed Kilgore standing in front of the barbecue restaurant with four or five other young men, and that Kilgore did not have a "bush" haircut (short on the sides and brushed up on top) at that time. The officer spoke to Kilgore and the others and asked them to get off the streets since the police were expecting trouble as a result of the slaying. While Kilgore presented no witnesses other than the officer to confirm his alibi, neither did the State rebut the alibi with any evidence other than the identification testimony.

The unsatisfactory nature of the evidence prompted the trial judge to direct verdicts of not guilty as to defendants Ealey, Horton and Smith. Kilgore's conviction was apparently based on the description of a man running from the scene by witnesses Woodson, Ligon and Winchester as well as the actual identification of Kilgore by Levy as the man he saw running away from the scene. The eyewitness testimony of James Edwards, however, contradicts the version by Levy, as does the testimony of witness Campbell. We note, as did the appellate court, the particularly unsettling fact that three entirely different descriptions of the man who fled the scene were given. While we have frequently upheld convictions based upon positive identification of a defendant by a single witness, those cases involved circumstances differing substantially from these. Edward Levy did positively identify defendant as the man he saw running from the scene and tucking a gun in his coat; he also testified he had known defendant previously. But the probative value of that testimony is substantially impaired by the fact that the only eyewitness to the shooting testified the killer was not Kilgore; he, too, had known Kilgore prior to the occurrence. No other witness identified defendant; Juanita Campbell, who had known Kilgore earlier, said he was not the man she saw leaving the scene; three of four witnesses testified the man leaving the scene had a "bush" haircut; Officer Bradshaw testified that he saw and talked to defendant, whom he

had previously known, one-half hour after the shooting and that defendant did not have a "bush" haircut. There was no other evidence adduced linking defendant with the crime. In these circumstances, we believe there is not only a reasonable doubt whether Kilgore was the murderer of the victim, but also whether he was even present at the scene.

While questions of credibility and weight are for the jury, and we do not lightly take the step of reversing a jury's determination of guilt, this conviction cannot stand. *People v. Gardner,* 35 Ill.2d 564.

Accordingly, we affirm the appellate court reversal of the judgment of guilt.

*Judgment affirmed.*