THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME MARSHALL, Defendant-Appellant.

(No. 58320;

First District (4th Division)—February 26, 1975.

Paul Bradley and Laurence A. Benner, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Michael J. Polelle, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Jerome Marshall, Ronald Stansberry, and Billy Hill were indicted for the murder of Alphonso Thomas. Stansberry and Hill entered negotiated pleas of guilty, but Marshall elected to stand trial on the charge of murder while committing the forcible felony of armed robbery (Ill. Rev. Stat. 1969, ch. 38, § 9—1(a)(3)). A jury returned a verdict of guilty, and Marshall was sentenced to a term of 14 to 20 years in the penitentiary.

Marshall appeals from the conviction and raises several issues for review. However, since we have determined that the case must be reversed, the only question we deem it necessary to discuss is whether the evidence was sufficient to establish Marshall's guilt beyond a reasonable doubt.

The evidence presented at trial established that, on December 9, 1971, Alphonso Thomas was stabbed to death in the neck with an approximately 5-inch-long knife. The stabbing occurred in Thomas' basement apartment, located at 304 East 59th Street in Chicago. A neighbor, Gussie Brown, testified that she received a telephone call from Thomas about 3:30 P.M. on the date of the occurrence, during which Thomas stated that he had just been robbed. Ms. Brown immediately telephoned the Chicago Police Department and Donald Keyes, the uncle of Thomas. Then, Ms. Brown went to Thomas' apartment and, through a window, saw Thomas struggling to come to the door. However, according to the witness, Thomas collapsed before he reached the door. Chicago police officers arrived shortly thereafter, and Alphonso Thomas was found lying face down in a pool of blood. Blood was smeared in all four rooms of the basement apartment.

Donald Keyes, the uncle of the deceased, was called as a witness by the State. Keyes stated that he examined the apartment shortly after the incident and reported to the police that the following items were missing: a 9-inch Panasonic color television set; a leather billfold; some

food stamps; an electric iron; and some 45-rpm records. According to Keyes, the name "Al" had been written on the labels of the records by Thomas prior to his death. Keyes further testified that he had been asked to come to the Wentworth Avenue police station on December 14, 1971 to look at some records and that he recognized a record that belonged to the deceased because the initials "Al" appeared on the label. The witness identified People's Exhibit No. 2 as the record that had been recovered by the police. Keyes also identified People's Exhibit No. 1 as the television set which was missing from the apartment on December 9, 1971. According to Keyes, the apartment was again burglarized 2 days after the incident in which Thomas was stabbed.

Stanford Dillow, the manager of a tavern located one block from the scene of the crime, testified that Jerome Marshall entered his place of business between 3:30 and 4:30 P.M. on the date of the incident and asked if he wanted to buy a television set. After negotiating with Marshall for a short time, Dillow purchased the television set, identified as People's Exhibit No. 1, for $55. On cross-examination, Dillow stated that the television set had been brought into his tavern by a man other than Marshall.

Chicago Police Officer Michael Boyle, head of the team assigned to investigate the homicide of Alphonso Thomas, testified that he recovered a Panasonic color television set, identified as People's Exhibit No. 1, from Stanford Dillow. Based upon statements given by Dillow and another witness, the officer arrested Jerome Marshall at his home on December 12, 1971. While inside the apartment waiting for Marshall, the officer observed a large number of 45-rpm records. Marshall was then transported to the police station, advised of his constitutional rights, and questioned. Officer Boyle stated that Marshall at first denied any knowledge of the sale of the television set. When confronted with the statements of witnesses regarding his participation in the sale, according to Boyle, Marshall then acknowledged that he was involved in the sale of the television, but denied any knowledge of a killing in the area.

Officer Boyle testified further that, on December 14, 1971, he filed a complaint for a search warrant, alleging probable cause to believe that 45-rpm records marked with the name "Al" or "Helen" could be found in the Marshalls' apartment. A search warrant was issued pursuant to the complaint. The officer stated that a search of the apartment, where Jerome Marshall had lived with his mother and brothers, uncovered several hundred 45-rpm records. One of the records recovered from the Marshall apartment was identified by Donald Keyes as People's Exhibit No. 2.

Testimony regarding the events relating directly to the stabbing was

provided by Marshall's co-indictees, Ronald Stansberry and Billy Hill. A plea bargain was effected on behalf of Billy Hill, who agreed to testify for the People in return for a 5- to 15-year sentence to be imposed on a plea of guilty to the charge of involuntary manslaughter. In addition, the State agreed that it would not oppose early parole for Hill, who had not been sentenced under the agreement at the time he testified. A plea bargain was also effected on behalf of Ronald Stansberry, who prior to trial had filed an alibi defense. After negotiations between counsel, Stansberry withdrew his plea of not guilty and entered a guilty plea to the murder of Alphonso Thomas. Stansberry was sentenced to a term of 14 to 25 years with the Department of Corrections. He subsequently testified on behalf of Marshall.

Billy Hill, testifying for the People, admitted that he was an unemployed heroin addict with a $50-a-day narcotics habit at the time of the occurrence. He testified that on the afternoon of December 9, 1971, he, Ronald Stansberry and a man identified as "Dice" planned to burglarize a house. Hill stated that Stansberry claimed to know of a house which had a television set that could be stolen. According to the witness, Stansberry borrowed a knife from a friend. Then, Hill, Stansberry and "Dice" went to the basement apartment of Alphonso Thomas at 59th Street and Prairie Avenue.

Hill testified further that he and "Dice" remained outside while Stansberry entered the Thomas apartment. While Hill and "Dice" were waiting outside the apartment, Jerome Marshall walked up to them and asked what they were doing. Hill explained that they were trying to get into Thomas' apartment. Then, according to Hill, he rang the apartment bell and was admitted by Stansberry. Hill stated that he told Marshall and "Dice" to "come on," and the three men entered the apartment where Stansberry was waiting.

Upon entering the apartment, Hill saw a trail of blood leading to a partially open bathroom door, through which he saw a man sitting on the bathtub. Stansberry explained that he and the man had "got into it," according to Hill. The witness testified that he then went into the living room and began unplugging the television set, assisted by Marshall. Then, according to Hill, Marshall left the area where the television set was located and began getting some 45-rpm records.

Hill testified further that he carried the television set out of the apartment. After their departure, Marshall told him that he knew where the television set could be sold. Hill and "Dice" then carried the television to a nearby tavern, following Marshall's instructions. When they were outside the tavern, Marshall handed the 45-rpm records that he had been carrying to "Dice" and told "Dice" to take the records to his house.

Hill and Marshall then entered the tavern with Hill carrying the television set. After some negotiations with the tavern owner, Stanford Dillow, $55 was paid over to Marshall for the television set.

Finally, Hill testified that Marshall told him while the two men were incarcerated in the Cook County Jail awaiting trial for the murder of Thomas, that he (Marshall) had prevented Thomas from getting out of the bathroom after Stansberry and Hill left the scene.

Ronald Stansberry, testifying for the defense, stated that he, Billy Hill, and "Dice" planned on December 9, 1971, to burglarize a house. According to Stansberry, Jerome Marshall did not participate in the agreement to commit the burglary and also did not enter the apartment of Alphonso Thomas. Stansberry denied seeing Marshall on the date of the incident but stated that he did see Billy Hill. The witness tried unsuccessfully to invoke his right against self-incrimination. When required to testify, Stansberry stated that he did not see Marshall in the Thomas apartment, that he saw Hill and "Dice" when he came out of the apartment but did not see Marshall, that he told Hill he had "had it out with the man," and that the television set was still in the apartment when he left.

Thereafter, the jury returned a verdict of guilty to the indictment for murder, and Marshall was sentenced to a term of 14 to 20 years in the penitentiary.

In this appeal, Jerome Marshall contends, *inter alia*, that the evidence presented at trial did not establish his guilt of the murder of Alphonso Thomas beyond a reasonable doubt. He argues that the testimony of his codefendant, Billy Hill, an admitted heroin addict, was induced by the State's promise of leniency and contradicted by the testimony of Ronald Stansberry, another codefendant.

■■ The role of a reviewing court, when considering conflicting evidence as to material facts in issue, is set forth by the court in *People v. Coulson* (1958), 13 Ill.2d 290, 295-96, 149 N.E.2d 96:

> "* * * [I]t is the duty of a jury, or of a court sitting without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and on review, this court will not substitute its judgment for that of the jury or trial court. (*People v. Tensley*, 3 Ill.2d 615; *People v. Kirilenko*, 1 Ill.2d 90.) But it is always the duty of this court to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed. (*People v. Williams*, 414 Ill. 414; *People v. O'Connor*, 412 Ill. 304; *People v. Buchholz*, 363 Ill. 270; *People v. Fontana*, 356 Ill. 461.) A judgment of conviction can be sustained only on

credible evidence which removes all reasonable doubt of the guilt of the defendant, and it is the insufficiency of the People's evidence which creates such doubt. If a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case. (*People v. Widmayer*, 402 Ill. 143; *People v. Cullotta*, 376 Ill. 333; *People v. Washington*, 327 Ill. 152.) The foregoing principle of law is a corollary of the presumption of innocence to which a defendant in a criminal case is entitled, and to the rule that the People have the burden of establishing the defendant's guilt beyond a reasonable doubt."

The record reveals that the State's case against Jerome Marshall rested largely upon the incriminating testimony of Billy Hill, his alleged accomplice. Hill admitted that he was an unemployed heroin addict. Although indicted along with Marshall, Hill successfully negotiated an agreement whereby he pled guilty to a reduced charge of involuntary manslaughter and was promised that the State would not oppose his early parole in exchange for his testimony against Marshall.

■■ The testimony of accomplice witnesses is competent evidence in a criminal trial. (*People v. Nastasio* (1963), 30 Ill.2d 51; 55, 195 N.E.2d 144, 147; *People v. Dell* (1966), 77 Ill.App.2d 318, 326, 222 N.E.2d 357, 362.) However, the utmost caution is required of a court or jury when reliance is placed upon accomplice testimony alone. (*People v. Hansen* (1963), 28 Ill.2d 322, 332, 192 N.E.2d 359, 365; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 175, 274 N.E.2d 846, 858.) When accomplice witnesses have hopes of reward from the prosecution, their testimony should not be accepted unless it carries with it absolute conviction of its truth. *People v. Hermens* (1955), 5 Ill.2d 277, 285-86, 125 N.E.2d 500; *People v. Zaeske* (1966), 67 Ill.App.2d 115, 121, 213 N.E.2d 577.

The reasons for the restricted weight to be placed upon the uncorroborated testimony of an alleged accomplice was stated in *People v. Hermens* (1955), 5 Ill.2d 277, 285, 125 N.E.2d 500, 504-05:

> "* * * [S]uch testimony has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice toward the accused, fear, threats, promises or hopes of leniency, or benefits from the prosecution, which must always be taken into consideration."

In this case, Hill admitted that he had supported his heroin addiction by selling "dope" and committing a number of "strong-armed robberies." More importantly, he acknowledged planning and participating in the crime. However, Hill's testimony implicating Marshall in the robbery was directly contradicted by that of another accomplice, Ronald Stansberry, who testified that Marshall neither participated in the agreement

to burglarize the apartment nor entered it. Both Hill and Stansberry agreed that Marshall was involved in neither the planning nor the early stages of the robbery.

The material corroboration or direct contradiction of an accomplice's testimony is entitled to great weight. (*People v. Hermens* (1955), 5 Ill. 2d 277, 286, 125 N.E.2d 500, 505; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 179, 274 N.E.2d 846, 860.) The incriminating testimony of Hill, placing Marshall at the scene of the crime, was directly contradicted by Stansberry. Hill's testimony of an alleged conversation with Marshall while the two were incarcerated, in which Marshall made certain admissions, is uncorroborated and, in our opinion, unconvincing.

■■■ We are not unmindful that the verdict of a jury is entitled to great weight. However, the jury's verdict is not conclusive of the sufficiency of the evidence to sustain a conviction, and it is the duty of the court, on review, to set the verdict aside if satisfied, from a consideration of all the evidence, that there is a reasonable doubt of the defendant's guilt. (*People v. Kessler* (1928), 333 Ill. 451, 460, 164 N.E. 840, 844; *People v. Mostafa* (1971), 5 Ill.App.3d 158, 274 N.E.2d 846. See also *People v. Kilgore* (1973), 15 Ill.App.3d 862, 305 N.E.2d 328.) While questions of credibility and weight are for the jury, and we do not lightly take the step of reversing a jury's determination of guilt, this conviction cannot stand. *People v. Kilgore*, (1974), 59 Ill.2d 173, 319 N.E.2d 489; *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232.

After carefully reviewing the record, we are convinced that there is insufficient credible evidence to support the jury's verdict and establish the defendant's guilt beyond a reasonable doubt. Therefore, we reverse the conviction. Since it does not appear that the prosecution would be able to produce additional evidence upon another trial, the judgment is reversed without remand.

Reversed.

DIERINGER, P. J., and ADESKO, J., concur.