THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DAVID SEYMOUR *et al.*, Respondents-Appellants.

Fifth District    No. 76-187

Opinion filed October 6, 1977.

JONES, J., dissenting.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon, and David Y. Eberspacher, research assistant, for appellants.

William A. Schuwerk, Jr., State's Attorney, of Chester (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

On September 18, 1975, the defendants, David Seymour and Ray Harper pled guilty to the charge of unlawful possession of cannabis. They were placed on three years probation.

A petition to revoke defendants' probation was filed on February 5, 1976, alleging that both defendants committed various offenses, including

unlawful possession of hypodermic needles, unlawful exchange of same and also a burglary. After a hearing, the Circuit Court of Randolph County found that there was enough evidence to support a finding that the defendants had committed the burglary and the offenses involving needles and syringes and revoked defendants' probation. They were sentenced to a term of one to three years in the penitentiary.

Defendants' appeal is based on the grounds that the prosecution failed to sustain its burden of proof. In passing on this claim it will be necessary to go over the evidence in some detail, but first we must address ourself to the problem of mootness which has been raised by the state.

■■ The State argues that the issue of defendants' probation being properly revoked is moot because defendants are now released on parole from the penitentiary. As authority for this proposition, the State cites *People v. North*, 3 Ill. App. 3d 428, 278 N.E.2d 401 (1972). The opinion in that case is much less than one-half page so it is difficult to ascertain the specific criteria the court is resorting to in making the mootness determination. Moreover, it appears that the defendant in that case may have been attempting to challenge the original conviction for which he was placed on probation. Clearly, this did not lie within the scope of review at the hearing on his probation revocation. Nevertheless, *North* is cited in *People v. Yackle*, 42 Ill. App. 3d 695, 356 N.E.2d 664 (1976), which held that the probationer's claim was moot because the most that could be obtained under the circumstances would be the vacation of the order of revocation and sentence and the consequent return of the defendant to probationary status. Mere release of the prisoner should not mechanically foreclose consideration of the merits by the court. There is a great deal at stake in a probation revocation hearing and it should be surrounded with the requisite elements of due process. As stated by our supreme court in *People v. Pier*, 51 Ill. 2d 96, 100, 281 N.E.2d 284 (1972):

> "Since the results of a probation revocation may be a deprivation of liberty and, consequently, as serious as the original determination of guilt * * * due process of law requires that a defendant charged with having violated his probation be entitled to a *conscientious judicial determination* of the charge according to *accepted and well recognized procedural methods.*" (Emphasis added.)

■■■ Many deep and abiding problems are encountered primarily at a low level of visibility in the criminal process—in the contest of prosecutions for minor offenses which carry only short sentences. People deprived of constitutional rights at this level should not be left remediless and defenseless against repetitions of such improper conduct. A criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the

challenged conviction. (*Sibron v. New York*, 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968).) Although the term has been served, the results of the probation revocation may persist. Subsequent convictions may carry greater penalties; civil rights may be affected. The instant case involves parole status dependent upon close supervision of both defendants and out-patient treatment at a mental health center for defendant, Ray Harper. For these reasons, the defendants are entitled to show that the probation revocation was invalid.

In considering whether the State has met its burden of proof, we will examine the burglary charge first and then the hypodermic needle charges, because the charges are based on two different sources of evidence.

The State's two primary witnesses of the burglary charges were Nathan Harper, a brother of defendant Ray Harper, and Rob Eldridge. Both of these witnesses gave statements to the police implicating defendants in a burglary. Harper and Eldridge were in custody for unrelated charges, which were dismissed as a result of giving the statements accusing the defendants. In addition both Nathan Harper and Eldridge received immunity from prosecution for the burglary in which they involved defendants.

By the time defendants' revocation hearing was had, and despite threats of prosecution for perjury, both Nathan Harper and Eldridge unequivocally denied the truth of the statements they had previously given to the police. Harper claimed that the police threatened to send him back to a detention center if he did not sign the statement and the only reason he did sign the statement was because he did not want to go back to the detention center. Eldridge testified that he was threatened with jail if he did not sign the statement implicating defendants.

■■ In their statements, both Nathan Harper and Eldridge admitted to being accomplices in the burglary. As accomplices, their credibility is subject to inherent doubt. Furthermore, because these two received rewards for their statements in the form of immunity, those statements should receive very close scrutiny. As stated by the court in *People v. Mostafa*, 5 Ill. App. 3d 158, 175, 274 N.E.2d 846 "the utmost caution is required of a court or jury when reliance is on accomplice testimony alone." This problem was considered recently in the case of *People v. Marshall*, 26 Ill. App. 3d 905, 910, 326 N.E.2d 246, 251 (1975), wherein the court stated:

> "When accomplice witnesses have hopes of reward from prosecution, their testimony should not be accepted unless it carries with it absolute conviction of its truth.* * *
>
> The reasons for the restricted weight to be placed upon the uncorroborated testimony of an alleged accomplice was stated in

*People v. Hermens* (1955), 5 Ill. 2d 277, 285, 125 N.E.2d 500, 504-05:

' * * * [S]uch testimony has inherent weaknesses, being testimony of a confessed criminal and fraught with dangers of motives such as malice toward the accused, fear, threats, promises or hopes of leniency, or benefits from the prosecution, which must always be taken into consideration.' "

It is obvious that these statements of the State's two witnesses lack the "absolute conviction of truth." Furthermore, the proponents themselves, directly refuted their statements at the hearing.

Defendants also had an alibi witness. Patricia Oakley testified she was visiting the Seymour home on the evening of the burglary. She further testified that both defendants remained at the home until at least 1:30 a.m. when she left. Nathan Harper's statement specifically stated that the burglary occurred at about 11:30 p.m.

The only testimony connecting defendants with any hypodermic needles is that of Joe Brooks. It appears that Mr. Brooks' mother and brother discovered a bag of hypodermic needles stashed underneath Joe's bed. The brother went to the police and made a deal with them whereby Joe Brooks was to receive immunity for implicating defendants. Brooks cooperated with the police in a scheme to try and catch defendants with the needles found under Brooks' bed. The object was to put Brooks under surveillance and have Brooks transfer the needles to defendants, who had allegedly given them to Brooks to hide until further notice. This plan never succeeded.

Neither of the defendants were ever seen in possession of these needles by anyone other than Brooks. Joe Brooks had a great deal of trouble with the date of the original transfer of the needles from the defendants to Brooks. Brooks originally told the police that the transfer was made in the second week of December. When Brooks testified at the hearing, he stated he took possession of the needles the day after Thanksgiving, which he was "pretty sure" was November 26. Eventually, the State conceded that the purported transfer occurred November 28. Joe Brooks also testified that the purported transfer occurred November 28. Joe Brooks also testified that he gave about one-half of the needles and syringes to a total stranger who appeared at his trailer and told Brooks he had been sent by the defendants. This transfer took place sometime in December.

Defendants presented an alibi defense for *both* days alleged by the State. David Seymour's co-worker testified that he worked with defendant Seymour from 8 a.m. to 5 p.m. on November 26. Brooks alleged that the exchange occurred at 10 a.m. Mrs. Seymour recalled that on November 28 her son was sick in bed and never left home.

Although a probation revocation hearing is not a criminal proceeding, evidence of violation must be clear and convincing. (*People v. Figueroa*, 30 Ill. App. 3d 656, 333 N.E.2d 586 (1975).) Admittedly, the question of witness credibility is generally left to the trial court, and is seldom disturbed by courts of review. (*People v. Novotny*, 41 Ill. 2d 401, 244 N.E.2d 182 (1968).) However, this rule is by no means inflexible. Where the evidence is unsatisfactory, improbable, or insufficient to support the judgment, the reviewing court has a duty to reverse. The supreme court stated in *People v. Crowell*, 53 Ill. 2d 447, 451-52, 292 N.E.2d 721 (1973):

> "However, the finding of a violation of probation will not be disturbed simply because of a conflict in evidence. The trial judge who heard the evidence was in a better position to weigh the testimony of the witnesses than is a reviewing court, and we will substitute our judgment for that of the trial court only when the testimony is contrary to the manifest weight of the evidence and not where the evidence is merely conflicting."

Here, even though the burden of proof upon the State was only to prove the instant violations by a preponderance of the evidence (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(c)), the character of its evidence was so dubious and contrary to the manifest weight of the evidence that the court must reverse the orders of revocation.

■■ The appellant's revocation orders cannot rest upon the abandoned statements of Harper and Eldridge, nor upon the uncorroborated, inconsistent testimony of Joe Brooks. All of these individuals were faced with the alternative of setting up the defendants or facing criminal charges themselves. These people seized upon the only opportunity they could to extricate themselves from rather "sticky" situations.

After carefully reviewing the record, there is insufficient credible evidence to support the charges and establish appellants' guilt by a preponderance of the evidence.

For the reasons set forth, the judgment of the Circuit Court of Randolph County revoking the probation of the defendants is reversed.

Judgment reversed.

KARNS, J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority has substituted their judgment of the credibility of the witnesses and the weight to be accorded their testimony for that of the trial court. Under the facts present in this record such substitution is unwarranted and I accordingly respectfully dissent.

I believe the People proved that the defendants violated their

probation by committing a burglary of the S. & L. Sanitation Corporation building by proper and legal evidence, which the trial court was entitled to believe, and that the exoneration testimony of the alleged accomplices and other witnesses for defendants was unworthy of belief, and the trial court was justified in disregarding it. I further believe that the majority erred in failing to take note of, or even mention, a substantial factor of corroboration present in the trial court's rejection of the exoneration testimony of the alleged accomplices.

The burglary occurred in the early morning hours on December 13, 1975. On December 20, 1975, Nathan Harper, brother of defendant Ray Harper, was arrested and gave a statement detailing the events of the burglary and implicating himself, the two defendants and Robert Eldridge. Nathan also led the officers to an automobile at the residence of Carl Inselmann. The automobile was titled in the name of defendant Ray Harper and in its trunk were the items of property taken in the burglary. On January 31, 1976, Robert Eldridge was arrested and gave a statement substantially similar to that of Nathan Harper.

At the hearing on the petition to revoke probation Joe Brooks testified that defendants came to his trailer after the arrest of Nathan Harper. He related that defendants told him that they had committed the burglary at the S. & L. Sanitation Corporation and that they were concerned that Nathan might get scared and sign a statement. The admission of defendants to Joe Brooks constitutes proof that defendants committed the burglary, if the testimony was believable. Both Nathan Harper and Robert Eldridge, when called to testify, repudiated their signed statements and said they were given under coercion. They professed to know nothing of the burglary. The statements, hearsay as to defendants, were then introduced into evidence as impeachment of the testimony of Nathan Harper and Eldridge. Patricia Oakley testified for defendants that she was at the home of defendant Seymour as a babysitter December 12, 1975, arriving between 5:30 and 6:30 and leaving about 1:30 a.m. She stated both defendants were there the entire time.

Defendants did not testify.

These facts present the classical situation for a determination of the credibility of the witnesses. The trial court could, and obviously did, believe Joe Brooks and disbelieved Nathan Harper, Robert Eldridge and Patricia Oakley. The testimony of Nathan Harper was severely impeached by the fact that he led police to the stolen property located in an automobile titled in the name of defendant Ray Harper. This circumstance lends veracity to his statement and shows or tends to show he was not testifying truthfully when he took the witness stand.

The majority has correctly stated the law regarding the burden of proof and the manner in which the testimony of accomplice witnesses is to be

received. They should keep in mind, too, that those same rules, and the same motivations, apply to those testifying for defendants in this case. Their position *vis a vis* the defendants should subject their testimony to equal doubt and hesitation when it is directed in their favor.

The trial court was, of course, aware of these rules and the inherent doubt with which the testimony of the various witnesses should be received. His was the superior vantage point. His judgment should be affirmed.