THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD H. FRANZ, Defendant-Appellant.

Second District   No. 76-315

Opinion filed October 17, 1977.

Ralph Ruebner and Allen Wiederer, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

A McHenry County jury found Gerald H. Franz, defendant-appellant, hereinafter referred to as the "defendant," guilty of burglary and theft of under $150. He was sentenced to three years' probation, with the conditions that he serve a term of 12 months' periodic imprisonment and pay a fine of $1,000. The defendant has appealed.

Three issues are raised by the defendant in his appeal. First, he contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Secondly, he contends that the trial court erred when it refused to give a jury instruction he tendered, and, thirdly, the defendant contends that the trial court was in error when it allowed into evidence the defendant's 1970 burglary conviction.

After reviewing the record and weighing the arguments presented, it is our finding that the judgment of the circuit court of McHenry County should be affirmed.

An indictment was handed down on November 14, 1975, charging the defendant with the crimes of burglary and theft of less than $150. The charges arose from the February 1, 1975, burglary of the Pantry Restaurant in Crystal Lake, Illinois. The defendant demanded a jury trial, which was commenced December 1, 1975.

The fact that the Pantry Restaurant had been burglarized was not disputed at trial. However, the defendant denied committing the crime. The defendant testified that he believed he was at the home of his sister-in-law on the date of the crime.

The State's principal witness at trial was James Coss. Coss testified that he was at the Town Tap, a Crystal Lake tavern, on the date of the burglary. At approximately 9 p.m., the defendant arrived at the Town Tap. He and Coss played the bowling machine while they had a couple of drinks. The topic of their conversation eventually turned to possible burglary targets. The two men then left the tavern and drove around Crystal Lake for approximately one hour before returning to the Town Tap at about midnight. Coss testified that it was at this time that they decided to burglarize the Pantry Restaurant, which is next to the Town Tap, because it was convenient and because there were few people around at that time of night.

Coss' testimony continued to the effect that about midnight he and the defendant went to the alley behind the Town Tap and the Pantry Restaurant. According to Coss, the defendant then tried to pry open a rear window to the restaurant. Failing in that effort, the defendant threw a rock through a rear window. The two men then crawled through the broken window into the kitchen of the restaurant. While in the restaurant, according to Coss, the defendant crawled from the kitchen to the front of

the restaurant to check the cash register for money. The defendant found no money in the cash register and returned to the kitchen of the restaurant where he and Coss searched through drawers for money. They found a cigar box containing change and a green bank bag containing currency. Coss testified that they then exited the restaurant by the broken window and drove off to divide their loot, which amounted to approximately $70.

Coss also testified in regard to his prior relationship with the defendant and his dealings with the police. In 1967, the defendant, Coss and two others were convicted of a burglary. The three others received probation, while Coss received a sentence of three to six years in prison for what was his first felony conviction. Coss testified that he had held a grudge against the defendant for about a year and a half, but lost that grudge as he learned a trade in prison. In 1972, Coss' wife was killed in an automobile accident. Coss had difficulty adjusting to the loss of his wife and developed an amphetamine habit which he still had at the time of the burglary of the Pantry Restaurant. Coss testified that he supported this habit by selling drugs to others.

Further testimony revealed that on two separate occasions in the summer of 1974, Coss had sold narcotics to an undercover agent of the McHenry County Sheriff's Department. Sometime after these two sales, Coss was picked up and questioned by the McHenry County State's Attorney. The State's Attorney released Coss on the condition that he attempt to gather information that would be of assistance to an on-going homicide investigation McHenry County was conducting. When Coss failed to report back to the State's Attorney, the State's Attorney became concerned. However, before any action to locate Coss was taken, the State's Attorney was informed that Coss had participated in a recent string of four burglaries. Coss was subsequently apprehended in Carpentersville. It was after this arrest that Coss implicated the defendant in the February 1 burglary of the Pantry Restaurant in Crystal Lake.

However, before Coss talked to the State's Attorney and implicated the defendant, he arranged for immunity from prosecution for the four burglaries in which he had been involved, to have two of the three drug charges pending against him nolle prossed and to plead guilty to the third drug charge. In exchange for having four unsolved burglaries removed from his files, the State's Attorney agreed to recommend that Coss be given a sentence of one year's probation and periodic imprisonment for the one offense to which he pleaded guilty. The jury was made fully aware of Coss' arrangement with the State's Attorney during the course of the trial.

Through the testimony of a restaurant employee, the restaurant owner and a Crystal Lake police officer, the State presented evidence that a

burglary had been committed and that the physical evidence was generally consistent with the testimony of James Coss.

The defendant testified in his own behalf. He asserted that he had not participated in the burglary. He testified that he thought he was at the Hanover Park home of his sister-in-law on the night in question. He could not be certain of the exact date. However, he was certain that it was between January 31, 1975, when his brother-in-law was laid off, and November 3, 1975, when his brother-in-law applied for unemployment compensation.

The testimony of the defendant's wife and sister-in-law corroborated that of the defendant, even to the point of being uncertain as to the exact date of the visit.

The defendant also testified that although he had frequented the Town Tap in the past, that he had not been in the establishment during the months of January and February of 1975. This testimony was contradicted by that of Stephen F. Heiman, the owner of the Town Tap. Mr. Heiman testified that although he could not say for certain that the defendant had been in his tavern on the night of February 1, 1975, he was certain that the defendant had been in his tavern at least two or three times a month in January and February of 1975.

At the close of the trial, the trial court permitted the State's Attorney, over the defendant's objection, to read into evidence the defendant's 1970 burglary conviction. During his direct testimony the defendant had admitted to his 1967 burglary conviction.

Defense counsel tendered a proposed jury instruction which read, "Testimony that a witness is a drug user is to be considered by you only insofar as it may affect the credibility of a witness." The proposed instruction was refused by the trial court on the grounds that there was no authority for the instruction and because there was no evidence that any witness was a drug user at the time of the trial.

■■ We deal first with the defendant's contention that he was not proved guilty beyond a reasonable doubt. The defendant asserts that the only evidence connecting him to the crime was the testimony of James Coss, his alleged accomplice. The defendant contends that because Coss was addicted to amphetamines at the time of the offense and had been granted immunity from prosecution for his participation in the crime, his testimony was insufficient to establish the defendant's guilt beyond a reasonable doubt. We disagree.

First of all, Coss' testimony was generally consistent with the physical evidence. The discrepancies in the details were not so significant as to make his testimony unbelievable. Secondly, there is the testimony of Stephen F. Heiman that the defendant had been in the Town Tap four to

six times in January and February of 1975, which is in direct contradiction to the defendant's testimony. Thirdly, James Coss testified that the defendant helped him burglarize the Pantry Restaurant. The defendant testified that he did not participate in the burglary. The defendant's alibi was corroborated by the testimony of his wife and sister-in-law, but none of them could definitely say where the defendant was on the night in question. Clearly, the determination of guilt or innocence by the jury came to a question of the credibility of Coss and Heiman as opposed to that of the defendant and his relatives.

"In this regard, it is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) It is peculiarly the province of the jury to weigh the evidence, judge the credibility of witnesses, and determine the facts. A reviewing court will not set aside a jury's verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.)" (*People v. Barksdale* (1976), 44 Ill. App. 3d 770, 775, 358 N.E.2d 1150, 1154.)

In the case at hand we do not find the testimony of the State's witnesses to be so unreasonable, improbable or unsatisfactory as to justify a reversal of the finding of the jury.

The defendant makes much of the fact that the principal witness against him was his alleged accomplice and has cited a number of cases to support his contention that the testimony of his alleged accomplice was insufficient to prove him guilty beyond a reasonable doubt. We do not find any of these cases to be controlling in the case at hand. *People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500, and *People v. Marshall* (1975), 26 Ill. App. 3d 905, 326 N.E.2d 246, are both cases where the defendant had two alleged accomplices, one of whom testified that the defendant had participated in the crime and the other of whom testified that the defendant had not participated in the crime, thus directly contradicting one another. In the case at hand, there was no testimony that directly contradicted the testimony of the defendant's accused, James Coss, except the defendant's testimony.

*People v. Price* (1974), 21 Ill. App. 3d 665, 316 N.E.2d 289, involves the testimony of two accomplices that the appellate court characterized as unbelievable. Furthermore, the testimony of the defendant and other disinterested defense witnesses directly contradicted the testimony of the accomplices as to the defendant's activities on the day in question. In the

case at hand, Coss' account of the burglary is both plausible and believable. Furthermore, there was no definite testimony in contradiction of Coss' testimony in regard to the defendant's activities on the day in question.

*People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291, found the Illinois Supreme Court overturning an armed robbery conviction based solely on the uncorroborated testimony of the alleged accomplice. The court cited two reasons for its decision. First, the accomplice's testimony lacked the requisite absolute conviction of truth. The court's scepticism of the accomplice's testimony was prompted by the fact that he testified after being granted immunity from prosecution for the armed robbery but while he still had two other indictments pending against him. In the case at hand, at the time of this testimony there were no indictments or charges pending against James Coss, thereby removing any motive for him to fabricate a story in hopes of future leniency from the State's Attorney, as was the case in *Wilson*. The court's second reason for reversing Wilson's conviction was the victim's inability to identify Wilson as her assailant. The victim could not pick out the defendant out of a lineup, and, in fact, had identified another man as her assailant. Additionally, the State failed to explain the discrepancy between the victim's description of her assailant as being 5'6" and Wilson's actual height of 6'1"." Thus, in *Wilson*, there was testimony from the victim that contradicted the testimony of the alleged accomplice in several respects. In the case at hand, there was no witness whose testimony in any way contradicted the testimony of the alleged accomplice, James Coss.

■■■ The defendant's second contention is that the trial court erred in refusing the defendant's jury instruction on judging the credibility of a drug user. We hold the trial court properly denied the defendant's proposed instruction which reads as follows:

> "Testimony that a witness is a drug user is to be considered by you only insofar as it may affect the credibility of a witness."

It should be noted that the proposed instruction is framed in the present tense. While there was evidence introduced at trial that Coss was addicted to amphetamines at the time of the crime, there was no evidence that he was so addicted at the time of the trial. Therefore, because the proposed instruction must be supported by evidence introduced at trial (*People v. Mitchell* (1975), 34 Ill. App. 3d 311, 340 N.E.2d 226), the trial court did not err in refusing the tendered instruction. An instruction informing the jury that it could consider the evidence that a witness was addicted to drugs at the time of the crime in judging that witness' credibility would have been proper. (*People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469.) The defendant did not offer such an instruction framed in the proper tense, nor did he move to amend his

instruction. Therefore the court was not obligated to tender such an instruction. *People v. Bell* (1975), 27 Ill. App. 3d 171, 326 N.E.2d 507.

Finally, the defendant argues that the trial court erred in allowing into evidence the defendant's 1970 burglary conviction. The defendant argues that since the jury already knew of his 1967 conviction, the knowledge of the second conviction in 1970 could only prejudice the jury against him.

The standard to be applied to the admission of prior convictions into evidence is provided in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, where the Illinois Supreme Court held that it is within the sound discretion of the trial court to decide if the probative value of such evidence as to the defendant's credibility is greater than the danger of unfair prejudice to him. If the probative value of the evidence is greater than the prejudice to the defendant, the evidence may be admitted.

■■ In the case at hand, the defendant had admitted his 1967 burglary conviction in the course of his direct testimony. The exclusion of evidence of the defendant's 1970 burglary conviction would have had the effect of leaving the jury with the impression that the defendant had maintained a clean record since his first conviction. In light of this circumstance, we hold it was not an abuse of the trial court's discretion to allow in the evidence of the defendant's 1970 burglary conviction.

Finding the defendant's arguments to have been unpersuasive, we therefore affirm the judgment of the circuit court of McHenry County.

Judgment affirmed.

GUILD and WOODWARD, JJ., concur.