THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGEL GONZALES, Defendant-Appellant.

(No. 72-253;

Second District—September 18, 1974.

84

Ralph Ruebner and Richard Wilson, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

After a bench trial, the defendant was found guilty of involuntary manslaughter, and was sentenced to 8½ to 10 years imprisonment. He appeals contending (1) the trial court erred in denying his motion to suppress oral statements he made after his arrest, and (2) his sentence was excessive.

At approximately 2:30 A.M., on the morning of August 21, 1971, the defendant, his "common-law wife", and her three children by a previous marriage returned home from a visit with defendant's brother-in-law. Inside the house, the two older children went to sleep, but the 2-year-old boy sat on the couch and cried. When the child refused to stop crying on his command, the defendant struck the boy three or four times in the stomach with his fist. Immediately, Mrs. Gonzales noticed that her son's breathing was unusual. She picked up the youngster and left the house. About two blocks from the home, the child died. The pathologist determined that the cause of death was internal bleeding, and that the bleeding was caused by a traumatic laceration of the small bowel and a separation of the artery feeding that segment.

At 3:45 A.M., the defendant was arrested at his home and transported to the Aurora police station. At the station in the booking room an officer read to the defendant his constitutional rights in English off a card supplied to the officer by the police department. On inquiry, the defendant stated that he understood his rights. Thereafter, while still in the booking room the defendant was asked what caused the marks on his right hand. The defendant stated that he had hit a 2-year-old child. No other questions were asked the defendant at this time.

At 6:05 A.M., the defendant was taken from the cell block to the sergeant's room. There another officer in the sergeant's presence again read the defendant his constitutional rights in English and in Spanish from a card supplied to the officer by the police department. Specifically, the defendant was first read his constitutional rights in English, and in response to a specific inquiry he stated that he understood what was read to him. Thereafter, the defendant was read his constitutional rights in Spanish. The defendant was told to ask questions, if he did not understand, since the officer was not fluent in Spanish. The defendant had no questions and again stated that he understood what was read to him. Thereafter, the officer asked the defendant if he wished to waive his constitutional rights, and further explained to the defendant what the word "waiver" meant. The defendant stated that he wanted to tell the officers about the offense. The entire interrogation lasted 45 minutes.

Since the defendant could not read or write English, it was necessary to record the substance of his oral statements on video tape. The tape reveals that the defendant was again given his constitutional rights in English before being asked any substantive questions. On specific inquiry, the defendant stated that he understood his rights. The entire taping lasted 15 minutes wherein the defendant admitted that he had struck the 2-year-old boy in the stomach with a closed fist.

It is argued by the defendant that he lacked the mental capacity to understand his constitutional rights, and he therefore could not have freely, knowingly and voluntarily waived his rights. The defendant relies principally upon his own testimony and the testimony of a psychologist to support his contention. At the hearing on defendant's motion to suppress his oral statements, the defendant testified that he did not understand his constitutional rights and that he did not know what an attorney was. The psychologist testified that in a test of defendant's verbal abilities in English, he scored 61 which placed him in the lower 1% of this country's population in language efficiency; that the defendant was at a distinct disadvantage in language situations; that defendant could be sociable with words but not intelligent; and that in his professional opinion the defendant would have difficulty understanding the meaning of a phrase even if he understood each and every word in the phrase.

Balanced against this evidence, the officers testified to the procedure they used (as previously stated). The defendant testified that the officers had in fact read him his constitutional rights; that he told them he understood what was read to him; and that he thought that his right to remain silent meant that he "didn't have to say something." The psychologist testified that the defendant's non-verbal I.Q. is 97, which is average; that "non-verbal" refers to visual and motor skills and relates

to intuitive thinking, reasoning and work skills; that defendant's overall intelligence is an average of the two scores (79); and that the defendant's problem-solving ability is excellent. The evidence also reveals that the defendant was 27 years old at the time of his arrest; that he was born in the United States and has lived here his entire life; and that although an interpreter was provided for him at the hearing, he was able to answer all questions in English without her assistance. The trial court also saw the videotape which further revealed that the defendant, by his responses, understood the questions put to him.

Based on this evidence, the trial court concluded that the State had, by a preponderance of the evidence, proven that the oral statements of defendant were freely, voluntarily and knowingly made and were therefore admissible at trial.

■■ On the issue raised by the motion to suppress oral statements, the State has the burden of proof. (Ill. Rev. Stat. 1971, ch. 38, § 114—11.) However, the trial court need not be convinced of the voluntary nature of the statement beyond a reasonable doubt. (*People v. Torres*, 54 Ill. 2d 384, 392-93 (1973.) It is sufficient if the State proves by a preponderance of the evidence that the statement was voluntary. *People v. Jackson*, 41 Ill.2d 102, 109 (1968).

■■■ For the statement to be held admissible, the trial court must determine whether the suspect in custody was advised of his constitutional rights and, having been so advised, whether the defendant knowingly, voluntarily and freely waived those basic constitutional guarantees. (*Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966).) The question of a voluntary, free and knowing waiver depends on the total circumstances under which it is taken and no single factor is controlling. (*People v. Baker*, 9 Ill.App.3d 654 (1973).) Thus, subnormal mentality alone does not, *ipso facto*, render an oral statement involuntary. (*People v. Hester*, 39 Ill.2d 489, 500 (1968) and cases cited therein.) The crucial test as to whether defendant's rights were knowingly waived was recently addressed by the supreme court in *People v. Turner*, 56 Ill.2d 201, 205-06 (1973), wherein the court, quoting from *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 1466, 58 S.Ct. 1019 (1938), stated:

> " 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' "

The defendant does not challenge the adequacy of the words used in informing him of his constitutional rights, but asserts that due to both his inability to understand the English language and his subnormal intelligence, he could not have knowingly, voluntarily and understandingly waived his constitutional rights. This argument was made to the trial court and found non-persuasive. It is a rule of law which needs no citation that the trial court is in a superior position to observe the demeanor, candor, sincerity, and credibility of the witnesses, and to weigh the evidence. The trial court's finding will not be disturbed unless contrary to the manifest weight of the evidence. *People v. Burbank*, 53 Ill.2d 261, 266 (1972).

■■ The officers explained defendant's rights to him, three times in English and once in Spanish. While this, in and of itself, is of little consequence unless defendant possessed sufficient intelligence to understand (*People v. Turner, supra,* page 205), it is clear from the evidence that the English language was not foreign to the native-born defendant, that he did not require the assistance of the available interpreter and that he admitted understanding that he was not required to talk to the officers. The record reveals no evidence of duress or cajolery on the part of the police officers. From this court's viewing of the videotaped interrogation (conducted in English) it is clear that defendant, without hesitation or confusion, responded understandingly to all questions. Evidence of defendant's subnormal comprehension of English was in conflict with the total evidence before us. Concluding that the preponderance of the evidence clearly demonstrated defendant's ability to intelligently converse in and comprehend the English language, we find that the ruling of the trial court was not against the manifest weight of the evidence.

■■ The defendant next contends that his sentence is excessive under the Unified Code of Corrections and that it should be reduced to 1 to 3 years. Because defendant's case had not reached final adjudication, he is entitled to the benefit of the Code provisions. (Ill. Rev. Stat. 1973, ch. 38, § 1008—2—4.) Under the Code, the offense of involuntary manslaughter is a class 3 felony subject to a sentence of any term in excess of 1 year and not exceeding 10 years. (Ill. Rev. Stat. 1973, ch. 38, § 1005—8—1.) The Code further provides that the minimum term for a class 3 felony shall be 1 year "unless the Court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court." Here, the trial court, having regard for the nature and circumstances of the offense and the history and character of the defendant, clearly

indicated that the minimum term should be in excess of 1 year. We agree. In accordance with the Code provision, however, defendant's minimum term is reduced to 3⅓ years, one-third the duration of his maximum term. The sentence is modified to a term of 3⅓ to 10 years.

Judgment affirmed as modified.

SEIDENFELD and RECHENMACHER, JJ., concur.