THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DARNELL CARPENTER *et al.,* Defendants-Appellants.

Fifth District   No. 75-85

Opinion filed April 30, 1976.

436

G. J. MORAN, J., specially concurring.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Robert H. Rice, State's Attorney, of Belleville (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendants-appellants, Aaron Donnald and Darnell Carpenter, were convicted of murder, attempt murder and armed robbery after a joint jury trial in St. Clair County. Donnald was sentenced to consecutive sentences of 50 to 100, 10 to 30, and 6 to 18 years, and Carpenter was sentenced to consecutive terms of 30 to 90, 6 to 18, and 4 to 12 years. On appeal each defendant challenges the court's ruling on the voluntariness of confessions after denial of a motion to suppress; each defendant challenges the admission of the statement of the other in the joint trial; both defendants contend they were denied a fair trial by admission of evidence concerning unrelated offenses and possession of unrelated weapons; and both defendants contend that the sentences imposed were unauthorized and excessive.

The convictions arose from an armed robbery of a grocery store in East St. Louis, Illinois, wherein a security guard was killed and a store employee injured. Carpenter and another man were apprehended shortly after the robbery. After being in custody for approximately 10 hours, Carpenter gave a written confession which implicated Donnald. Donnald was arrested the next day and subsequently gave a written confession which implicated Carpenter.

Prior to trial a hearing was held on both defendants' motions to suppress. When the court learned that defendant Carpenter had left school at age 17 in the third grade, he continued the hearing as to Carpenter and ordered a psychological examination. The hearing on defendant Donnald's motion proceeded and the motion was denied. After the tests were completed on Carpenter, the hearing was resumed. The court heard the evidence of the test results, denied the motion to suppress and specifically found Carpenter competent to stand trial.

■■ Where an accused makes an inculpatory statement during custodial police interrogation in the absence of counsel, the State bears a heavy burden of proving that the accused knowingly and intelligently waived his right to remain silent or consult with counsel. *(Miranda v. Arizona,* 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628 (1966).) Whether these rights were knowingly and intelligently waived depends upon the totality of the circumstances *(People v. Prim,* 53 Ill. 2d 62, 289 N.E.2d 601 (1972); *People v. Simmons,* 60 Ill. 2d 173, 326 N.E.2d 383 (1975)), and we will not disturb the ruling of the trial court unless contrary to the manifest weight of the evidence. *People v. McCottrell,* 117 Ill. App. 2d 1, 254 N.E.2d 284 (5th Dist. 1969).

■■ Defendant Carpenter concedes that he was read the *Miranda* warnings and the record reflects three specific instances of compliance with the *Miranda* requirements. Defendant argues that because of his limited intelligence he could not and did not knowingly waive his constitutional rights. Although the capacity of the accused to understand what is told or read to him is an important factor, subnormal intelligence does not necessarily render an accused incapable of understanding or waiving his rights. *People v. Hester,* 39 Ill. 2d 489, 237 N.E.2d 466 (1968); *People v. Gonzales,* 22 Ill. App. 3d 83, 316 N.E.2d 800 (2d Dist. 1974).

In the instant case the People were required to establish by a preponderance of the evidence that defendant Carpenter was able to understand the *Miranda* warnings. The evidence shows that defendant was given the warnings upon being taken into custody, again by Officer Lawrence Brewer before the initial interrogation, after which defendant refused to say anything about his involvement, and again by Officer Brewer before Carpenter gave his statement. Officer Brewer testified that on one of these latter occasions, apparently just prior to giving the oral statement, defendant acknowledged that he understood the *Miranda* warnings read to him. The evidence also indicates that defendant Carpenter signed a waiver of rights form just prior to making the statement in question. Officer Brewer transcribed the oral statement, though not verbatim. Detective James Walker was also present when the statement was taken. Defendant signed all four pages of the typed statement, which was witnessed by the two officers. Officer Brewer denied having used any coercion or physical abuse to obtain the statement.

Defendant Carpenter relies heavily on the testimony of Donald Sundland, the psychologist appointed to conduct the tests. Sundland testified that defendant had a full scale IQ of 76 putting him in the lowest two percent of the general population. Sundland also testified that Carpenter was unable to read the Black Intelligence Test and that this placed him in the lowest five percent of the Black standardization. The

psychologist explained that defendant, whose mental age was placed at about 11 years, had a very low reading level and had trouble with simple words. In response to a hypothetical question regarding whether a person of defendant's mental abilities would be able to exercise his free will after 11 hours of intermittent questioning, Sundland stated that he thought that it would be unlikely that such a person would be as in charge of his faculties as he would after only an hour or so of questioning. Sundland's tests were inconclusive regarding defendant Carpenter's ability to recall specific events, although defendant definitely exhibited a specific memory defect. The psychologist concluded his direct testimony by stating that despite this memory defect, it was his opinion that the defendant was competent to stand trial. It should be noted that this opinion was expressed at the hearing on the motion to suppress. No formal motion suggesting unfitness was ever filed.

On cross-examination, Sundland agreed that defendant Carpenter could recall the events of the armed robbery and understand the nature of the charges against him. He stated specifically that the memory defect did not unduly limit his ability to cooperate with counsel in the preparation of his defense. The psychologist also stated that it was possible that a person of defendant's limited intelligence could refuse to confess.

Defendant Carpenter testified that he could not remember being given the *Miranda* warnings and that although he was given an opportunity to read the statement and waiver of rights form, he could not read or understand them. Defendant Carpenter now contends that this evidence established that he was unable to understand the *Miranda* warnings and that the trial court's finding of compliance with *Miranda* was manifestly erroneous.

■■ Defendant's argument ignores much of the State's evidence. Officer Brewer, who took the statement from defendant, testified that defendant was given the *Miranda* warnings and indicated his understanding of them. This testimony stands in conflict with defendant's testimony that he was unable to understand the warnings. The psychologists's testimony involved only defendant's ability to understand the written warnings and was not conclusive as to oral warnings. As to defendant's ability to read and write, the evidence established that defendant can read and write his own name. Although of low intelligence, he could understand and answer all the questions put to him by both the prosecution and the defense. His statement given to police provides a coherent explanation of the facts surrounding the crime and establishes defendant's ability to understand and relate events. In the final analysis, the psychologist concluded that defendant was "competent" to stand trial. The trial judge, having observed the witnesses, their demeanor while testifying, their candor and sincerity, was in a far better position than the

reviewing court to weigh the evidence regarding defendant's ability to understand and waive his *Miranda* rights. *(People v. Gonzales.)* That the trial judge believed the testimony of Officer Brewer instead of defendant's testimony was within his province. Having once been advised of his rights and having indicated orally that he understood them, defendant's choosing to speak and not to request a lawyer was evidence that he knew his rights and chose not to exercise them. *(People v. Burbank,* 53 Ill. 2d 261, 291 N.E. 161 (1972), *cert. denied,* 412 U.S. 951, 37 L. Ed. 2d 1004; 93 S. Ct. 3017; *People v. West,* 25 Ill. App. 3d 827, 322 N.E. 587 (5th Dist. 1975).) We believe that the evidence was sufficient to justify the trial court in finding a valid waiver by defendant of his *Miranda* rights.

It should be noted that other courts have found valid waivers of *Miranda* in situations analogous to that presented in the case at bar. In *People v. Gonzales,* 22 Ill. App. 3d 83, 316 N.E.2d 800, (2d Dist. 1974), the defendant had an I.Q. of 79 and was in the lower one percent of the country's population in English verbal abilities. In that case, however, the appellate court refused to reverse the trial court's findings that the defendant was able to understand the *Miranda* warnings and make a valid waiver of his fifth amendment rights. In *People v. Reed,* 8 Ill. App. 3d 977, 290 N.E.2d 612 (2d Dist. 1972), according to psychiatric and psychological testimony, the defendant was in the lower 23 percent of the population in intelligence and suffered from organic brain damage and chronic alcoholism. A psychologist testified that in his opinion the defendant was incapable of understandingly waiving her rights. The State appealed and the appellate court reversed the trial court's finding, holding that defendant's low intelligence, in and of itself, was insufficient to establish one's lack of ability to understand or waive *Miranda* rights.

In *People v. Hester,* 39 Ill. 2d 489, 237 N.E.2d 466 (1968), the confession of a 14-year-old of limited intelligence, the mental abilities of an 11-year-old, was found to be admissible. Many of the cases cited in *Hester* demonstrate a finding of admissibility in situations similar to the instant case. For example, in *People v. Isby,* 30 Cal. 2d 879, 186 P.2d 405 (1947), cited in *Hester,* the court held admissible the confession of a 26-year-old defendant who possessed an I.Q. of 58, a near imbecile classification, and a mental age of 8 years and 8 months. See also *People v. Lara,* 67 Cal. 2d 365, 432 P.2d 202, 62 Cal. Rptr. 586 (1967).

Defendant Carpenter also argues that the trial court did not consider the psychologist's testimony in arriving at its decision. This contention is not supported by the record. The record reflects that the trial court interrupted the hearing on the motion to suppress Carpenter's confession for the specific purposes of obtaining a psychological report and continued the hearing on the motion to suppress. We point out, of course, that the trial court is presumed to have considered all competent evidence.

For the foregoing reasons, we conclude that the trial court's finding that defendant Carpenter was both able to understand and did waive his *Miranda* rights is not contrary to the manifest weight of the evidence.

Defendant next contends that, apart from compliance with *Miranda,* the confession was not voluntarily given. Initially he argues that because of his low intelligence level he was unduly susceptible to suggestion by the police officers. Although this argument finds some support in the testimony of Dr. Sundland, the record as a whole does not reflect that the officers attempted any suggestion which would indicate that defendant's confession was not the product of a free will.

Defendant also argues that his testimony of beatings and threats is uncontradicted and must be accepted as true. According to defendant, the physical abuse was administered by Detective James Walker who did not testify at the hearing on the motion to suppress. Officer Brewer, who did testify, denied any knowledge of physical abuse. He did testify that Walker was present when the statement was taken and throughout his interrogation of Carpenter. There was no evidence that Walker was ever alone with Carpenter. In short, Brewer's testimony, read in its entirety, is a denial that the mistreatment complained of ever occurred.

■■ The facts upon which this contention is based are strikingly similar to those in *People v. Delk*, 36 Ill. App. 3d 1027, 345 N.E.2d 197 (1976), recently decided by this court. In *Delk*, we noted that while the State bears the burden of producing every material witness to the alleged involuntariness of the confession *(People v. Armstrong*, 51 Ill. 2d 471, 282 N.E.2d 712 (1972)), the allegation of error in failing to call a witness is waived by defendant's failure to object at the suppression hearing. (Ill. 420, 262 N.E.2d 298 (1st Dist. 1970).) In addition, as in *Delk*, defendant Carpenter's motion to suppress the confession contained no details of the alleged physical abuse and provided the State with no clue as to the identity of any officers involved. Defendant cannot be heard to complain of the State's failure to call Detective Walker and we find that the trial court's holding that the confession was voluntary is not against the manifest weight of the evidence.

Defendant Donnald also challenges the voluntariness of his confession. Officer Robert White testified that he gave defendant the *Miranda* warnings and that defendant indicated his understanding of his rights. He testified that he alone took the statement and that no force, intimidation or threats were used to obtain the statement. Defendant Donnald testified that Officer White made promises of leniency and that other officers, including a Detective Henry and an Officer Cox told him that they were not interested in him but only in two co-defendants. Other unidentified officers purportedly threatened both defendant Donnald and his pregnant

wife. The trial judge was under no obligation to believe defendant and disbelieve Officer White and we cannot say that his decision that the confession was voluntary was against the manifest weight of the evidence.

Defendant also contends that the State's failure to call Detective Henry and Officer Cox bound the court to believe defendant's version of the events. Defendant failed to object to the absence of these officers and failed to allege with particularity the acts complained of and the officers responsible in his motion to suppress. Thus, as noted above, defendant cannot now be heard to complain of the failure of the officers to testify.

Defendant Donnald further argues that the court erred in admitting his confession because it was the product of defendant Carpenter's illegally obtained statement. Defendant Donnald was not arrested or interrogated until defendant Carpenter implicated him in the offense. Having decided, however, that defendant Carpenter's statement was freely and voluntarily given, we need only say that the argument is totally without merit.

■■  Each defendant contends that the admission into evidence of the statement of the other violates his sixth amendment right to confront witnesses against him under the rule of *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). The rule, however, is not as broad as defendants believe. In *People v. Delk,* we held, relying in large part on *People v. Rosochacki,* 41 Ill. 2d 483, 244 N.E.2d 136 (1969), that where each defendant's statement is inculpatory and where independent corroborating evidence exists of the guilt of each, the possible prejudice resulting from the denial of each defendant of the right to cross-examine the other is insufficient to require reversal. We reaffirm that rule in the instant cause.

The two statements here were substantially the same as to the facts of the occurrence and each statement clearly inculpated its relator. In addition, defendant Carpenter was apprehended near the scene of the shooting carrying two .22-caliber revolvers which matched the description given by victims of the robbery. Carpenter also had in his possession a stocking cap matching the description of that worn by one of the robbers. Defendant Donnald, arrested the next day, had in his residence the .357 magnum revolver taken from the body of the slain security guard and a .38-caliber revolver and a sawed-off shotgun matching the description of weapons used in the robbery.

Defendant has cited several cases, all of which are distinguishable and of no aid here. We find that the admission of the inculpatory statements of each defendant did not violate the sixth amendment rights of the other in the presence of independent corroborating confessions of guilt and strong independent evidence of the guilt of each defendant.

Defendants next contend that the introduction of weapons unrelated to the particular defendants denied them a fair trial. The first gun, People's Exhibit 13, was a sawed-off .12-gauge shotgun found in defendant Carpenter's car. The gun was identified by Detective Lawrence Brewer who testified that defendant Carpenter denied knowledge of its presence but stated that one of the robbers must have placed it there. The second weapon, People's Exhibit 14, was a four-barrel Derringer taken from defendant Donnald's home. It was identified at trial by Officer Robert White. People's Exhibit 17, also taken from Donnald's home and identified by White, was a .20-gauge sawed-off pump shotgun.

During the search of Donnald's home a .357 magnum revolver and a .38-caliber revolver were seized along with the shotgun. Two .22-caliber revolvers were seized from defendant Carpenter's person upon his arrest. Two .38-caliber revolvers were seized from one Ronnie Macklin, an alleged co-participant in the offense. A sawed-off .410-gauge shotgun was seized from defendant Carpenter's home. All of these weapons were introduced at trial and defendants concede their admissibility.

Both defendants' statements indicate that George Macklin, another alleged co-participant, carried the .410-gauge shotgun and that this was the only shotgun involved. According to the statements, Ronnie Macklin carried two .38-caliber revolvers, Donnald carried two .22-caliber revolvers. Carpenter carried two .22-caliber revolvers, and George Macklin carried a .38-caliber revolver along with the shotgun. Donnald discarded the two .22 revolvers after the robbery and these weapons were apparently never found.

Defendant cites *People v. Smith,* 413 Ill. 218, 108 N.E.2d 596 (1952), as controlling. In *Smith,* the court found reversible error in the admission of three automatic pistols and two sawed-off shotguns found in the car in which defendant was arrested. The court noted, however, that defendant was arrested 6 months after the offense and that the car did not belong to him. In addition, only one pistol was used in the robbery and shooting and that gun, also admitted into evidence, was positively identified by witnesses and connected to the shooting by ballistics evidence.

■■ The State relies upon the established rule that "it is competent to prove that an accused person, when arrested, possessed a weapon suitable for the commission of the crime charged, even though no claim is made that he actually used it in committing the particular crime." *(People v. Magby,* 37 Ill. 2d 197, 202, 226 N.E.2d 33, 36 (1967). See also *People v. Lenhardt,* 340 Ill. 538, 173 N.E. 155 (1930); *People v. Johnson,* 35 Ill. 2d 516, 221 N.E.2d 497 (1966); *People v. Tribbett,* 41 Ill. 2d 267, 242 N.E.2d 249 (1968).) In all of these cases, however, no evidence was presented of the specific weapon used in the commission of the offense.

In *People v. Moore,* 42 Ill. 2d 73, 246 N.E.2d 299 (1969), the evidence

indicated that the deceased was killed with a shotgun. Upon arrest, defendant was found in possession of a pistol and shoulder holster. Both were produced at trial. The court held that the weapons recovered were circumstances of the arrest and were properly the subject of comment. The court noted, however, that the pistol was not admitted into evidence and the jury was instructed to disregard it. In *People v. Longstreet*, 23 Ill. App. 3d 874, 320 N.E.2d 529 (1st Dist. 1974), the court held admissible an automatic pistol and a large bore revolver even though the victim of the armed robbery testified that the weapon used was a "snub-nose blue steel small bore revolver" also introduced at trial and identified by the victim.

■■ We believe that the clear import of the decisions since *People v. Smith* is that all weapons found in the possession or under the control of an accused upon apprehension are admissible in a trial for an offense where similar weapons are used. The controlling factor in *Smith*, therefore, must be the lack of evidence that the weapons were under defendant's control.

In the instant case, one shotgun was found in Carpenter's car. He told the police that it must have been placed there by one of the robbers. We believe that sufficient facts were established to connect this weapon to defendant Carpenter and thus the weapon was admissible. The other shotgun was found in Donnald's house and was clearly under his control. Both defendants' in their statements said that a shotgun was used, although both referred to a .410-gauge weapon which was found and introduced. No reference was made to the Derringer although it was clearly within the control of defendant Donnald. Under the rule of *Magby* and the cases cited above, we find no reversible error in the admission of the three weapons complained of, especially in light of the lack of complaint here of the admission of seven other weapons connected but little more to the offense. At most, the admission of these weapons would be harmless error.

Defendant Donnald argues that the court committed reversible error in refusing to grant a mistrial after the prosecutor introduced evidence that he previously had been in the penitentiary. This came out when the prosecutor began to read defendant Donnald's statement to the police. Donnald had stated in the confession that he met Ronnie Macklin in the penitentiary. The prosecutor stopped reading, obviously aware of the import of the statement. Defendant's counsel stated "Go ahead" whereupon the prosecutor continued reading the statement. During argument on the motion for mistrial, the court stated that defense counsel had known of the content of the statement prior to trial and had, upon motion, succeeded in having a portion concerning an unrelated offense

deleted before the confession was read to the jury. Thus, the court concluded, defendant was in no position to object to the statement regarding the penitentiary, particularly where counsel prompted the prosecutor to continue reading the allegedly prejudicial statement.

Although evidence of unrelated offenses are generally considered prejudicial and inadmissible, an exception exists where the evidence tends to prove motive, common design, intent, identity or absence of mistake. *(People v. Dewey,* 42 Ill. 2d 148, 246 N.E.2d 232 (1969).) In fact, "Evidence of other offenses is admissible, if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime." *(People v. Cole,* 29 Ill. 2d 501, 503, 194 N.E.2d 269, 271 (1963). See also *People v. Dewey.*) In the instant case, it is clear that the State did not attempt to introduce evidence of a propensity to commit the crime. Donnald's reference to the penitentiary in his statement to the police was obviously his explanation of how he came to know the Macklin brothers. The defense made a concerted effort to exculpate both defendants by repeated references to the Macklins who were not prosecuted at this trial. (But see *People v. Macklin,* 37 Ill. App. 3d 100, 345 N.E.2d 181 (1976).) In addition, defendant Donnald was not arrested until after Carpenter had confessed. Carpenter was with Ronnie Macklin when he was arrested. Carpenter's statement and Donnald's acknowledgment of his prior relationship with the Macklins were the only evidence connecting Donnald with the Macklins and thus was relevant to connect all four participants with the robbery. We should also note that the record supports the trial court's ruling that defense counsel had knowledge of the contents of the statement and had failed to ask for its deletion. In addition he prompted the prosecutor to finish the statement and made no objection until the State had rested. We find no prejudice to defendant Donnald in the reference to the penitentiary.

■■ Defendants finally contend that the consecutive sentences imposed are unauthorized and excessive. Defendant appears to concede that under *People v. Williams,* 60 Ill. 2d 1, 322 N.E.2d 819 (1975), imposition of consecutive sentences in this case is permissible. We agree. The original motive of the defendants was armed robbery. The murder and attempt murder were separate and distinct acts, arising from separate motivation and wholly unnecessary to the completion of the armed robbery.

Defendants also contend, however, that they are entitled to the more lenient consecutive sentencing provision of section 5—8—4(c) of the Unified Code of Corrections (Ill. Rev. Stat., 1973 Supp., ch. 38, par. 1005—8—4(c)), in effect prior to January 1, 1974, which provided that "the aggregate minimum period of consecutive sentences shall not exceed

twice the lowest minimum term authorized * * * for the most serious felony involved." Since the most serious felony involved here (murder) carries a 14-year minimum, defendants argue, the aggregate minimum period of imprisonment must be reduced to 29 years.

The State concedes defendants' argument and ask that the sentences be ordered to run concurrently. We cannot, however, accept the full content of the concession.

This case appears unique on this point. In the cases cited by appellants and the State (People v. Morgan, 59 Ill. 2d 276, 319 N.E.2d 764 (1974); People v. Williams, 60 Ill. 2d 1, 322 N.E.2d 819 (1975); People v. Gill, 29 Ill. App. 3d 356, 330 N.E.2d 552 (5th Dist. 1975)), the defendants had been sentenced prior to July 1, 1974, but had direct appeals pending when the law was changed to allow aggregate minimums of twice the highest minimum sentence for the two most serious felonies involved. (P.A. 78—939, §1, effective July 1, 1974.) In the instant case, although prosecution was commenced prior to July 1, 1974, defendants were neither tried nor sentenced until after that date. We feel compelled, however, to afford defendants the benefit of the prior law.

■■ The choice before us is to modify the sentences to run concurrently as did the courts in Gill and Morgan or to reduce the minimum sentences to total no more than 28 years, twice the minimum sentence for murder, the most serious felony involved. Reduction of the minimum consecutive sentences produces the anomalous result of imposing a lesser aggregate minimum sentence than could be imposed if the sentences were to be served concurrently. Surely this was a major reason for the rather quick amendment to the statute. We believe, however, that the instant case is a compelling one for the imposition of consecutive sentences. We therefore reduce defendant Carpenter's minimum sentence for murder from 30 years to 18 years. We reduce defendant Donnald's minimum sentence for murder from 50 years to 18 years. Defendant Donnald's minimum sentence for attempt murder is reduced from 10 years to 6 years and the minimum sentence for armed robbery is reduced from 6 years to 4 years. In all other respects the sentences are affirmed.

We specifically reject defendants' contention that the sentences are excessive. In fact, we would not reduce the minimum sentences but for the proscription of section 5—8—4(c) of the Uniform Code of Corrections. The sentences as modified are within the statutory limits and we find no abuse of discretion by the trial court in imposing severe sentences for such a brutal and senseless slaying. (See People v. Taylor, 33 Ill. 2d 417, 211 N.E.2d 673 (1965); People v. Van Gilder, 26 Ill. App. 3d 152, 324 N.E.2d 715 (5th Dist. 1975).) We note that the trial court would have been fully justified in invoking section 5—8—2 of the Unified Code

of corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—2) to impose double the maximum penalty available because of the ample evidence of the use of firearms.

The judgments of the Circuit Court of St. Clair County are affirmed as modified.

Affirmed as modified.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, specially concurring:
I agree with the result reached by the majority, but do not concur in all of the language contained in the opinion.