*In re* RICKY POTTS, a Minor.—(THE PEOPLE OF THE STATE OF
ILLINOIS, Petitioner-Appellee, *v.* RICKY POTTS, Respondent-Appellant.)

First District (1st Division)    No. 76-1637

Opinion filed March 20, 1978.

Ralph Ruebner, Rebecca J. Davidson, and Richard Steck, all of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Patrick J. Jennings, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

A delinquency petition alleging commission of murder was filed against Ricky Potts, a minor (respondent), then some 12 or 13 years old. The trial court committed respondent to the juvenile division of the Department of Corrections. He has appealed.

In this court counsel for the respondent urge he was arrested without a warrant and without probable cause and his motion to quash the illegal arrest and to suppress the fruits thereof should have been allowed; respondent was incapable of understanding the *Miranda* warnings and his

statement to the police was coerced by their overbearing conduct; the evidence failed to prove the cause of death of the victim and the record lacks a prior adjudication of wardship.

Concerning the hearings on the motions to quash the arrest and to suppress respondent's statements, Investigator Gerald Slattery testified that on April 16, 1976, he was investigating the death of a 5-year-old child. The case involved the alleged burning of the deceased. He spoke to a juvenile named Maurice Slatton. Slatton told the officer that two juveniles named Dennis Potts, brother of respondent, and Eddie Turnage had been chasing him for three weeks and threatening him because they thought he had informed the police they had burned the deceased child. Maurice Slatton told Officer Slattery of having heard Dennis Potts say to Eddie Turnage, "I poured it on him this time, you'll have to do the next one." Young Slatton also told the officer that Turnage had shouted at him, "We'll burn you like we did the little boy." Officer Slattery directed some police officers to bring Dennis Potts and Eddie Turnage to him for questioning. Officer Slattery continued to talk to young Slatton. The latter told him that the respondent was also involved in the burning incident. Slattery then sent a radio message to the officers asking that they also bring in respondent for questioning. Slattery testified that he did not note this information regarding respondent in the written report which he later prepared.

It also appeared from police testimony that the respondent's mother was advised that the police wished to question the respondent and his brother, Dennis Potts, regarding the burning of a little boy. The mother testified that the police did not tell her precisely what was involved. The officers testified that the mother extended permission for taking the boys to the station. When asked to accompany them, she stated that she could not. Officer Gerald Dahlberg testified that he advised the respondent of his *Miranda* rights in the police car and the respondent told him he understood. This was repeated at the police station and respondent again stated that he understood his rights. At that time, the police telephoned respondent's mother with the request that she join them but she did not appear. Another officer, Investigator John Bulger, asked respondent if he had been informed of his rights. The respondent stated that he had and that he understood.

The officers then spoke to respondent. He told them that his brother Dennie, Eddie Turnage and the juvenile referred to as Maurice had burned the child, Shawn Winfield. Respondent told the officers that this had taken place in a garage which he described. He then took the police to the garage. In further police conversations, Dennis Potts told the police that respondent had actually lighted the match which burned the victim. Respondent denied this and told the officers that his brother Dennis had lit

the match. The evidence is to the effect that this questioning took approximately four hours. There was testimony that the officers did not shout at the respondent but spoke in conversational tones.

During the questioning a youth officer called respondent's mother and she came to the station. An assistant State's Attorney advised the respondent concerning his *Miranda* rights in the presence of the mother. Respondent then gave a written statement to an assistant State's Attorney. This was done in the presence of respondent's mother. The written statement was solely exculpatory.

The record does not reflect whether respondent used, or requested the use of bathroom facilities, or whether he was fed while in the station.

■■ The initial question is whether the police had probable cause to arrest the respondent. The determination of probable cause must be made upon all of the circumstances presented to the investigating officer. In a sense, the test is subjective and it has been stated that probable cause exists when " 'the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " *People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238, quoting from *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.

In the case before us, Officer Slattery had full knowledge of the fact that a criminal offense had been committed upon the person of the burned child. He was then informed by Maurice Slatton that respondent was involved in the burning. A situation of this type is completely different from that in which police have received information from a paid informer. The element of possible gain to the informer from furnishing his information is completely lacking. Thus, the distinction between a paid informer and a citizen informant is an actual one. It was not necessary for the State to establish reliability of the informant in the case before us. See *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770, 345 N.E.2d 41, and cases there cited.

■■ In determination of the legality of an arrest, the burden of proof rests upon defendant. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 567, 342 N.E.2d 158, *appeal denied* (1976), 63 Ill. 2d 554.) As a reviewing court we may not disturb the conclusion reached by the trial court unless we find it to be "manifestly erroneous." (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, and cases there cited.) Additionally, in passing upon the ruling made by the trial court upon the motion to suppress, a reviewing court may consider evidence received after conclusion of the hearing on the motion. (See *Turner*, 35 Ill. App. 3d 550, 567.) The record before us shows that the informant, Maurice Slatton, testified during trial of the case. The trial judge therefore had opportunity to observe him and

to weigh his credibility and thereby to make an assessment of the credence that the police officer should have given his statements.

■■ We will add parenthetically that assuming the respondent had proved a lack of probable cause for his arrest, analysis of the entire record would lead us to affirm it upon consideration of the factors discussed in *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254. (See *Turner*, 35 Ill. App. 3d 550, 568.) We conclude that the result reached by the trial court denying the motion to quash the arrest was proper and it is affirmed.

On the motion to suppress his oral inculpatory statements, respondent urges that he lacked mental capacity to understand the warnings and to waive his rights and that the statements made by him were obtained as a result of police coercion.

■■ In reviewing this denial of the motion, we are obliged to consider the "totality of the circumstances." (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) The pertinent statute provides "[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary \* \* \*" rests upon the State. (Ill. Rev. Stat. 1975, ch. 38, par. 114—11(d).) However, the degree of proof required of the State has been described as "one of persuasion and not beyond a reasonable doubt." (Ill. Ann. Stat., ch. 38, par. 114—11, Committee Comments, at 345 (Smith-Hurd 1977).) Consequently the rule is that in determining the voluntary nature of a confession the "trial court need not be convinced beyond a reasonable doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence." *Prim*, 53 Ill. 2d 62, 70. See also *People v. Pittman* (1973), 55 Ill. 2d 39, 52, 302 N.E.2d 7.

As shown above, the *Miranda* warnings were read to the respondent on a number of separate instances. In each case he stated that he understood his rights. In each of these instances the police accepted respondent's statement that he understood the warnings and made no further inquiries from him. In support of his position, respondent called a probation officer who had spoken to him a number of times. She was familiar with both respondent and his brother. She had occasion to check the school records of the respondent. She had seen respondent about six times over a period of five months. In her opinion she knew his level of understanding. After hearing the warnings read, she expressed the opinion that respondent "possibly would not" understand the warnings as read. She stated that her opinion was that she was not sure and therefore she would say that she had no opinion.

A school counselor who was familiar with the respondent's work testified that respondent was a seventh grade student but his reading level

was equivalent to that of an average student beginning fourth grade. In her opinion, respondent's academic achievement was below average and his vocabulary level was about that of a student in the fifth month of second grade. Respondent was graded 89 in a school learning test supposedly similar to an intelligence quotient evaluation whereas a score of 100 would be average. However, the witness could not say exactly what score on this test would indicate an educational handicap.

In this type of situation, the evaluation of the waiver of rights depends upon all of the circumstances surrounding it. It has been specifically held that even a subnormal mentality standing by itself does not *ipso facto* vitiate the waiver. (*People v. Gonzales* (1974), 22 Ill. App. 3d 83, 86, 316 N.E.2d 800, *appeal denied* (1975), 57 Ill. 2d 608.) In *Gonzales*, a psychologist testified that defendant there rated 97 on an I.Q. test but he could not read or write English and there was an issue raised regarding his comprehension of spoken English. In *In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619, the respondent's I.Q. rating was 82 to 83 which meant that he was classified as being dull-normal and as having only a "mild" degree of intelligence. The test score in *Stiff* was lower than the score in the case before us but the court in *Stiff* held that there had been an effective waiver of *Miranda* rights.

■■ We note also *People v. Carpenter* (1976), 38 Ill. App. 3d 435, 347 N.E.2d 781, *appeal denied* (1976), 63 Ill. 2d 559. There, defendant left school when he was in the third grade at age 17. A psychologist testified that defendant scored 76 in an I.Q. test which would classify him in the lowest 2 percent of the general population. After citing and analyzing a number of cases, this court concluded that the finding of the trial court that defendant's waiver was understanding, was not contrary to the manifest weight of the evidence. Applying these authorities to the case before us, we reach the same result.

Finally, respondent contends that the confession was coerced. It is correct, as defendant urges, that respondent, then some 12 years of age, was taken from his mother's home and questioned by the police. There is testimony in the record, however, that the officers did not shout or raise their voices but spoke in a conversational level. There is police evidence that respondent was not threatened but respondent's mother testified that her son told her that he had been choked. The questioning proceeded for approximately four hours after which respondent made verbal statements in which he admitted that he had burned the deceased child. Respondent urges that there is no evidence that he was fed while in police custody or used the washroom during the time of questioning. The State responds correctly that there is no evidence to the effect that respondent requested and was denied food or the use of bathroom facilities.

■■ Respondent points out that the police should have taken the minor

to the nearest juvenile officer. Respondent arrived at the police station about 11 a.m. A youth officer was not notified by the police until 2:30 p.m. The statute provides that the minor shall be taken to the nearest youth officer "without unnecessary delay." (Ill. Rev. Stat. 1975, ch. 37, par. 703—2(1).) In our opinion, this requirement does not mean that it is the duty of the police to take an arrested juvenile immediately to a youth officer. Under the circumstances shown by this record, considering all of the surrounding facts, we do not believe that this delay was such as to require exclusion of the inculpatory statements made by respondent. (*People v. Murphy* (1974), 17 Ill. App. 3d 482, 308 N.E.2d 235.) Considered from every point of view advanced by the respondent, the order of the trial court denying the motion to suppress the inculpatory statements was proper and it is affirmed.

Respondent urges that it was necessary for the State to adduce expert medical testimony to establish that acts of respondent were the cause of death. The evidence shows that the victim, a 5-year-old boy, was burned on March 12, 1976. These burns resulted from ignition of lighter fluid which had been poured on the body and clothes of the victim. The boy's mother testified that his hair had been singed and he was burnt on the back, shoulder, inside of the left leg and on both arms about the elbows. The boy was not hospitalized but he was treated as an outpatient. He visited Cook County Hospital on alternate days for two weeks. Twelve days after the incident, on March 24, he was admitted to the County Hospital for skin grafts. Part of the time he was permitted to walk about. On March 29, 1976, he was taken to surgery. He suffered a cardiac arrest, lapsed into a coma and died on April 13, 1976.

■■ The parties stipulated that the cause of death was "burns, complicated by speudomonas septicemia, meningoencephalitis and cardiac arrest." Respondent now urges that this stipulation does not show the actual cause of death and that the terms used were beyond the understanding of laymen. We reject this contention. The stipulation is that the cause of death was burns with a number of complications. These complications indicate, even to the mind of a layman, the presence of infection which complicated the burns. However, we interpret the stipulation as amounting to an agreement by the parties that the cause of death was burns plus the later complications.

The stipulation has been looked upon by courts as an acceptable and sometimes a necessary device for the purpose of saving time of litigants, attorneys and courts. Where parties have stipulated to facts, as in the case at bar, they should not be permitted to change or to attack the binding validity of the stipulation and the facts which it presents. *Bridges v. Neighbors* (1975), 32 Ill. App. 3d 704, 708, 336 N.E.2d 233; *People v. Morris* (1972), 6 Ill. App. 3d 136, 139, 285 N.E.2d 247.

■■ We note also the recent decision of the supreme court in *People v. Love* (1978), 71 Ill. 2d 74, 84, 373 N.E.2d 1312, 1318, in which the supreme court pointed out that a "[d]efendant is liable for the decedent's death even though his acts are not the sole and immediate cause." In the case before us, it was not necessary for the State to prove the burns were the sole and immediate cause of death. In our opinion, it is sufficient that the parties stipulated that the cause of death was the burns and that a part was played by ensuing complications.

The need for consideration of the final point raised by respondent that the record does not show a prior adjudication of wardship by the trial court has been eliminated by the decision in *In re Jennings* (1977), 68 Ill. 2d 125, 132, 368 N.E.2d 864. The dispositional order appealed from is accordingly affirmed.

Order affirmed.

McGLOON and O'CONNOR, JJ., concur.